Robert E. **HOWARD**, Defendant,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 6315.

United States Court of Appeals
First Circuit.

May 11, 1965.

Daniel F. Featherston, Jr., Boston, Mass., for appellant.

John Paul Sullivan, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Senior Circuit Judge (by designation).

The appellant and one Bernard J. Champy, of Andover and Methuen, Massachusetts, respectively, were indicted in the court below for violation of the so-called "Anti-Kickback Statute." 60 Stat. 37, 38 (1946), 41 U.S.C. §§ 51, 54 (1958).[1]

The indictment alleges and it is not questioned that from June 19 to October 20, 1958, Howard was employed by Raytheon Manufacturing Company as assistant plant manager of its Andover plant where it was producing, or preparing to produce, Hawk Missiles "on a cost reimbursable basis" under a prime contract with the United States, that Howard at the time was in the process of building a home in Andover and that Champy was the general manager of Champy Construction Company, Inc., of Lawrence, Massachusetts, which was a subcontractor as defined in 41 U.S.C. § 52 with respect to the contract between Raytheon and the United States. Count 1 of the indictment charges that on several occasions during the period involved

[1]. 41 U.S.C. § 51 prohibits: "payment of any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly, by or on behalf of a subcontractor, as defined in section 52 of this title * * * to any * * * employee, or agent of a prime contractor holding a contract entered into by any department, agency, or establishment of the United States for the furnishing of supplies, materials, equipment or services of any kind whatsoever, on a cost-plus-a-fixed-fee or other cost reimbursable basis * * *."

Section 54, id., provides: "Any person who shall knowingly, directly or indirectly, make or receive any such prohibited payment shall be fined not more than $10,000 or be imprisoned for not more than two years, or both."

Champy knowingly caused Champy Construction Company to furnish labor and materials to Howard for the construction of his new home as "a fee, commission, gift, gratuity and compensation" paid on behalf of Champy Construction Company "as an inducement for awards of subcontracts and orders" from Raytheon to Champy Construction and "as an acknowledgement of subcontracts and awards previously awarded." Count 2 in like terms charges Howard with knowingly receiving labor and materials for his new home from Champy Construction Company for the prohibited purpose.

Howard and Champy were found guilty by a jury and sentenced. Howard appealed.

Appellant's principal contention is that the trial court misinterpreted the "Anti-Kickback Statute" by regarding it as a "Caesar's wife law." By this appellant means that the trial court allowed conviction on the mere appearance of guilt whereas it should have required a showing of specific criminal intent. From this premise he argues that the indictment fails to charge a crime, that the charge to the jury was incorrect, and that there was insufficient evidence to support the verdict. Wherefore he contends that his motions for a new trial and for acquittal were erroneously denied and that at least he should have a new trial.

In accordance with his theory of the case, the appellant first argues that an essential element of the crime as defined by the statute is the existence of a "connection" between the acceptance of a prohibited payment and the award of certain subcontracts. We do not agree.

■ Section 54 makes it a crime for any person to "knowingly, directly or indirectly, make or receive any such prohibited payment * * *," and § 51 defines the prohibited payment, insofar as relevant to this case, as a fee or gift which is paid or granted "as an inducement for the award of a subcontract.

* * *" The gist of the crime therefore is receipt of a prohibited payment with knowledge that it is made for the purpose of inducing the award of a subcontract. Whether the recipient actually induces the award of a subcontract is irrelevant. The statute forbids the purchase of good will in the contracting process.

■ Appellant's interpretation of the statute as requiring a "connection" between a prohibited payment and the improper awarding of subcontracts is based on too narrow a view of the vice the statute was designed to correct. This vice is not only the improper awarding of subcontracts but also the corruption of the judgment of officers, employees or agents of prime contractors who are in some manner participating in the awarding of subcontracts involving the use of government funds.

■ We think, therefore, that the purpose of the "Anti-Kickback Statute" is basically the same as that of the bribery statute, 18 U.S.C. § 201, and should be construed according to the same principles. And it has been long established that the crime of bribery is complete upon the acceptance of a bribe regardless of whether or not improper action is thereafter taken.[2] Wilson v. United States, 230 F.2d 521, 526 (C.A.4, 1956), cert. denied, 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); Whitney v. United States, 99 F.2d 327, 330 (C.A.10, 1938), and cases cited therein. What this Court said in regard to the giving of a bribe in Kemler v. United States, 1 Cir., 133 F.2d 235, 238 (1941), also applies to the acceptance of a kickback:

"The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of in-

2. Appellant's argument recalls Lord Bacon's defense to a charge of bribery, namely that he could not be guilty be-
cause he took from both sides and that therefore his subsequent decision would not be improper.

fluencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it."

■ It follows that appellant's further contention that the statute requires a showing of a specific criminal intent to induce or influence the award of particular subcontracts must also be rejected.

However, this does not mean that criminal intent is not an essential element of the offense or that conviction on the mere appearance of guilt would be proper. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), cautions against interpreting criminal statutes to produce such a result.

The trial court did not construe the statute as imposing absolute criminal liability. It charged the jury that "Intent is involved in this case. That may be proved beyond a reasonable doubt by circumstantial evidence." Furthermore the trial court correctly specified the nature of the required intent when it charged the jury that "the government must satisfy you beyond a reasonable doubt * * that Howard accepted the work and materials knowing that the work and materials were furnished for his home as an inducement for the award of some subcontract or orders under Contract 4030."

■ In sum we think the essential elements of the crime defined by § 54 are that the parties be within the class covered by the statute, admittedly they are,

a contract covered by the statute, as there admittedly is here, and an acceptance of a prohibited payment as defined in § 51 with knowledge of its nature and purpose.[3]

■ The remaining question is the sufficiency of the evidence to support a verdict of guilty of a crime containing the elements set out above. Appellant contends there was insufficient evidence that a prohibited payment was made or accepted with knowledge of its nature and purpose.

The suggestion that there was no evidence from which the jury could find the work and materials provided to Howard constituted a prohibited payment or kickback is without merit. The jury was entitled to infer from the way Champy carried the account on his books as an account payable rather than an account receivable, from Champy's feeble and belated attempts to collect, and from the surrounding circumstances, that Champy intended to confer a benefit on Howard in return for favorable consideration in the Raytheon bidding process.

Likewise we think the jury was entitled to infer that appellant accepted the work and materials with knowledge of the purpose for which they were offered. The fact remains that Howard did not pay for the benefits obtained from Champy although he had received a substantial mortgage payment to use for costs incurred in building his home at the same time the benefits were conferred. And the jury could find that Howard was aware of Champy's feeble attempts to collect and drew the appropriate conclusion therefrom. In few areas is the admonition to give proper deference to the jury's findings of fact more compelling than in the necessarily subjective area of intent. See Hoyer v. United States, 223 F.2d 134, 139 (C.A.8, 1955); Jackson v. United States, 330

---

3. Appellant would add that the recipient be in a position to influence the award of a subcontract. The statute does not appear to impose any such requirement. See United States v. Moore, 228 F.Supp. 935, 937 (D.C.S.D.Cal., 1964). But we need not decide this question for here the jury could find appellant was in a position to affect the award of subcontracts by informing Champy of the low bid and inviting him to bid below the lowest figure.

F.2d 679, 681 (C.A.8, 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58.

We have considered the other points raised by appellant but find nothing meriting discussion.

Judgment will be entered affirming the judgment of the District Court.