356 F.2d 324
 James J. DRISCOLL, Defendant, Appellant,
v.
UNITED STATES of America, Appellee.
Edward J. GERAGHTY
v.
UNITED STATES of America, Appellee.
James L. MAGUIRE
v.
UNITED STATES of America, Appellee.
Paul J. WATSON
v.
UNITED STATES of America, Appellee.
William A. YAKABOWICZ
v.
UNITED STATES of America, Appellee.
William J. DWYER
v.
UNITED STATES of America, Appellee.
 Nos. 6494-6499.
 United States Court of Appeals First Circuit.
 Heard December 7, 1965.
 Decided January 31, 1966.
 
 Francis J. DiMento, Boston, Mass., with whom James J. Sullivan, Jr., Ronald R. Popeo and Paul J. Burns, Boston, Mass., were on brief, for appellants.
 William B. Duffy, Jr., Boston, Mass., with whom W. Arthur Garrity, Jr., U. S. Atty., and Edward F. Harrington, Asst. U. S. Atty., were on brief, for appellee.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 These appeals stem from judgments in three separate trials originating from one indictment and two informations for alleged violations of federal wagering tax statutes.
 
 
 2
 In the first trial, appellants Driscoll, Geraghty, Maguire and Watson were alleged to have conspired together and with others (including appellants Yakabowicz and Dwyer who were named as co-conspirators but not as defendants) to defraud the United States of the $50 special occupational tax imposed on wagering and of the 10% excise tax imposed on wagers. In addition, each of the same four appellants was charged with willful failure to pay the special occupational tax prior to engaging in the business of accepting wagers and receiving wagers for or on behalf of a person liable for the tax on wagers, as required by 26 U.S.C. § 4411.[1] It was also alleged that each of these four appellants willfully failed to register and to file returns as required by 26 U.S.C. § 4412, which counts were dismissed by the court below. The jury returned verdicts of not guilty on the conspiracy counts for all four appellants and guilty on the remaining individual counts charging willful failure to pay the tax.
 
 
 3
 In the second case appellant Yakabowicz and one Kennedy were charged in one count with willful failure to pay the special occupational tax and, in a second count, with willful failure to register and file returns. As in the first case, the latter count was dismissed. The jury acquitted Kennedy and returned a verdict of guilty against appellant Yakabowicz.
 
 
 4
 In the third case a jury trial was waived. This case arose out of an information against appellant Dwyer containing two counts. The first count charged willful failure to pay the special occupational tax. The second count charged willful failure to register and file returns (with language identical to the counts which were dismissed in the first and second cases). Neither count was dismissed, motion to dismiss having been denied in toto, and the court found appellant Dwyer guilty under both counts.
 
 
 5
 * The first ground for reversal, asserted by all appellants except Dwyer, was the failure of the trial court, on request, to give an instruction that the jury could return a verdict of guilty of the lesser-included offense of non-willful failure to pay the special occupational tax.
 
 
 6
 The appellants were charged with willful failure to pay the special occupational tax required by 26 U.S.C. § 4411, in violation of 26 U.S.C. § 7203. The statutes create, in 26 U.S.C. § 7262, another crime, the non-willful failure to pay the tax. Since the crime defined in § 7262 contains all the elements of the crime defined in § 7203 except the element of willfulness, and results in a lesser penalty, it creates a lesser offense of which a defendant may be found guilty, in proper circumstances, if he is charged with and tried for a violation of § 7203.
 
 
 7
 Rule 31(c) of the Federal Rules of Criminal Procedure provides that a defendant may be found guilty of any "offense necessarily included in the offense charged". There is no question but that all of the elements of a non-willful failure to pay are included within the offense of willful failure to pay. The critical question is whether the state of the evidence in these cases required the giving of the lesser offense instruction.
 
 
 8
 The relevant evidence, in abbreviated form, is the following. In 1957 government agent Green had interviewed appellants Geraghty, Watson, and Maguire, and had presented each with "an affidavit relating to the federal wagering tax law", which each read, said he understood, but refused to sign. In 1960, government agent Savage again interviewed appellants Geraghty and Watson, talked about an affidavit required by the federal wagering tax law, and gave each a copy which he had filled out. This form of affidavit, which was in evidence, set forth that the affiant had been advised of the requirement of the $50 special tax, the 10% excise tax, the records required to be kept, and that he was not engaged in the wagering business. Neither appellant, after reading the affidavit, was willing to sign it. A third witness, Frugoli, gave testimony of being with appellants Watson and Driscoll on premises (The Pen Tavern) used for placing bets, and seeing these appellants, immediately after two lights inside the tavern had been extinguished by a look-out, burning pieces of paper below the bar. A fourth witness, Noonan, testified to a conversation with appellant Yakabowicz about wagering and the need to have a stamp. Yakabowicz answered, according to this witness, that he "had read about it in the newspapers; that I didn't think I needed one, that I was not a gambler."
 
 
 9
 No rebutting or contradictory evidence was presented. Appellants urge that no evidence was needed to create a dispute as to willfulness, since the issue had been raised by their pleas of not guilty. It was argued that the juries could have disbelieved some of the government's witnesses. Alternatively, say appellants, the juries could have believed the witnesses as to appellants' knowledge of the law but still have found missing the added ingredient of intent to disobey it. In any event, appellants argue that the court was invading the province of the juries in refusing to give them the option of returning verdicts of guilty of non-willful failure to pay the tax.
 
 
 10
 We disagree as to the cases of all appellants except Driscoll. In his case, because of the nature of the evidence involving him, we think such an instruction should have been given.
 
 
 11
 The Supreme Court, in Sparf v. United States, 1895, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343, dealt with a conviction for murder and refused to reverse it for failure of the trial court to give a manslaughter instruction to the jury, saying, 156 U.S. at 63-64, 15 S.Ct. at 278:
 
 
 12
 "A verdict of guilty of an offense less than the one charged would have been in flagrant disregard of all the proof, and in violation by the jury of their obligation to render a true verdict. There was an entire absence of evidence upon which to rest a verdict of guilty of manslaughter or of simple assault. A verdict of that kind would have been the exercise by the jury of the power to commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law."
 
 
 13
 This was followed, a year later, by Stevenson v. United States, 1896, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980, where the Court reversed the trial court for failure to give the jury a manslaughter alternative, there being considerable evidence of sudden passion on the part of the defendant, as opposed to cold-blooded, deliberate purpose. The Court acknowledged (162 U.S. at 321, 16 S.Ct. at 842) that there may be cases "where the uncontradicted evidence was so clear and overwhelming of a deliberate purpose" that a court might be justified in stating to the jury that the evidence, if believed, would justify conviction only for murder.
 
 
 14
 Berra v. United States, 1956, 351 U. S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013, cites both with approval: Stevenson, for the proposition that a lesser offense charge should be given "if the evidence justified it"; and Sparf, for the proposition that "the role of the jury * * * is to decide only the issues of fact, taking the law as given by the court."
 
 
 15
 It remained for Sansone v. United States, 1965, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882, to give further guidance. Citing all three cases above noted, the Court said that a lesser-included offense instruction is only proper where there is "a disputed factual element", i. e., where "there are disputed issues of fact which would enable the jury rationally to find" that all elements of the lesser offenses had been proved. 380 U.S. at 351, 85 S.Ct. at 1010. The Supreme Court has long recognized that to hold otherwise "would only invite the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." 380 U.S. at 350, n. 6, 85 S.Ct. at 1009.
 
 
 16
 We take Sansone to mean that when the government has made out a compelling case, uncontroverted on the evidence, on an element required for the charged offense but not for the lesser-included offense, there is a duty on defendant to come forward with some evidence on that issue if he wishes to have the benefit of a lesser-included offense charge. To put it another way, while a judge cannot prevent a jury from rejecting the prosecution's entire case, he is not obligated, under these circumstances, to assist a jury in coming to an irrational conclusion of partial acceptance and partial rejection of the prosecution's case by giving a lesser-included offense instruction. Two prerequisites seem vital: that there be no factual dispute and that a finding contrary to the only evidence on the issue would be irrational.
 
 
 17
 Both prerequisites exist in the cases of appellants Geraghty, Maguire, Watson, and Yakabowicz. In these cases direct evidence of appellants' knowledge of the existence of the federal wagering tax law had been introduced through three government witnesses. The record before us discloses no efforts to impeach, contradict, or explain this testimony. All we have are the pleas of not guilty.
 
 
 18
 We do not think that these pleas, standing alone, create the contradiction in evidence required by Sansone, supra. It is true that, at the outset of the case, the pleas of not guilty created an ultimate issue as to willfulness to be resolved by the jury. It is also true that by their silence in the face of specific and direct evidence on the issue of willfulness, appellants did not forfeit their right to have the jury instructed that willfulness must be proven beyond a reasonable doubt. But we think it is equally true that by remaining mute in the face of such evidence and relying solely on their pleas of not guilty, appellants did not create such a "disputed factual element" in the sense that entitled them to an instruction for a lesser-included offense. Cf. Edwards v. United States, 5 Cir., 1964, 334 F.2d 360, cert. denied, 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702.
 
 
 19
 In the recent case of United States v. Markis, 2 Cir., 1965, 352 F.2d 860, evidence of similar nature (i e., statements of a government agent of conversations with defendant about the requirement of a wagering stamp together with evidence of a covert gambling operation) had been introduced. This evidence had not been impeached. The court, while recognizing that the issue of willfulness was "disputed in the sense that it had to be submitted to the jury", nevertheless stated, 352 F.2d at 867:
 
 
 20
 "The mere fact that the jury was still free to disbelieve this portion of the agent's testimony does not elevate the issue to a truly `disputed' one; in the language of the Model Penal Code § 1.07(5) (1962), it does not provide `a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' Model Penal Code § 1.08 comment, at 42-43 (Tent. Draft No. 5, 1956). This hits the essential point. The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all `in the teeth of both law and facts' * * *."
 
 
 21
 We see no error in the refusal of the trial court to give the lesser offense instruction in these four cases.[2]
 
 
 22
 In Driscoll's case, while there was no "disputed factual element", the evidence as to willfulness was capable of more than one reasonable inference. It was not that of confrontation with knowledge of the federal wagering tax law. It was evidence of his having a transaction with a group of men in the Pen Tavern, conversing with a lookout, carrying money and paper into the office after lights went out, throwing a piece of paper into a trash barrel, retrieving it, and burning it beneath the bar. The government contends that this is "uncontradicted circumstantial evidence of defendants' (Driscoll and Watson) knowledge that they were violating federal law." It cites Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, and United States v. Marquez, 2 Cir., 1964, 332 F.2d 162, cert. denied, 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94.
 
 
 23
 These cases do stand for the proposition that willful tax evasion can be proven by circumstantial evidence of concealment of books and records (Spies), and of the operation of a lottery (Marquez). But the issue before us is not whether there was enough evidence of willfulness to support a guilty verdict. The issue is whether the uncontradicted evidence of Driscoll's knowledge of the federal wagering tax law was so unequivocal that the jury could not rationally find that his actions had to do solely with escaping detection and prosecution by the Commonwealth of Massachusetts for participating in the operation of a lottery.
 
 
 24
 On this issue, the language which the Supreme Court in Ingram v. United States, 1959, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503, applied to employees in a covert gambling enterprise, is pertinent. It said that their intimate connection and cooperation with the secret conduct of a lottery "actually are colorless as to the vital issue of knowledge * * * that their superiors owed federal wagering taxes. * * * Here, the criminality of the enterprise under local law provided more than sufficient reason for the secrecy in which it was conducted." 360 U.S. at 679, 79 S.Ct. at 1320.
 
 
 25
 We do not say that the evidence as to Driscoll would be so "colorless" as not to support a guilty verdict. Perhaps a jury could reasonably infer that Driscoll knew of the federal stamp requirement from Watson, or that his own actions showed a conscious violation of federal, as well as state, law. But we do say that the evidence, even though undisputed, is not so compelling and unequivocal on the issue of willfulness that a jury finding of non-willfulness would be irrational. Hence, as to Driscoll, the requested lesser-included offense instruction should have been given.[3]
 
 II
 
 26
 Appellants' second contention is that the indictment and informations should have been dismissed because registration and purchase of a wagering tax stamp would have violated their constitutional privilege against self-incrimination.
 
 
 27
 They do not challenge Lewis v. United States, 1955, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, or United States v. Kahriger, 1953, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, in which the Supreme Court upheld the registration requirements of the wagering tax statutes against assaults based on the Fifth Amendment. The statute was interpreted in United States v. Kahriger, supra, as being prospective with no compulsion on a defendant to confess to acts already committed, but with the requirement that "in order to engage in the business of wagering in the future he must fulfill certain conditions." 345 U.S. at 32-33, 73 S.Ct. at 515-516.
 
 
 28
 This, say appellants, is good law when applied to failures of individuals to register and pay the tax. But, in the cases before us, appellants point out that (a) the government has asserted a conspiracy in which all appellants were allegedly involved, either as defendants or co-conspirators; (b) the government has joined appellant Yakabowicz and one Kennedy in one count of one information, charging them with willful failure to pay the special occupational tax; and (c) the government has charged each appellant with willful failure to pay the tax, having engaged in the business of accepting wagers and having engaged "in receiving wagers for or on behalf of a person liable for the tax".
 
 
 29
 Against this accusatory background, appellants say that, "under the Government's view of the facts", the very act of registration (which, under Internal Revenue Service Regulation 26 C.F.R. 44.4901-1(c)(1), is a prerequisite to issuance of the stamp) would be a "confession to the past act of entry into a conspiracy to promote a lottery in violation of local laws" and would supply "incriminatory evidence of a past conspiracy to engage in gambling in the future". While this argument is directed chiefly to a conspiracy count, appellants urge that it also applies to the count linking appellant Yakabowicz and Kennedy in the single charge that they willfully failed to pay the special occupational tax, and to all the counts which charged appellants individually with "receiving wagers for or on behalf of" another. For, say appellants, a registration disclosing employment by another or a joint venture would also be the equivalent of a confession of a pre-existing conspiracy.
 
 
 30
 The conclusion of this line of reasoning is that since the issuance of a tax stamp requires prior registration, a joint venturer, employee, employer, or conspirator in wagering cannot be prosecuted for failure to purchase it, for he would be confessing his part in a conspiracy. Under this view, only the individual operator would be reached by the wagering tax statutes. Since any wagering enterprise involving more than one person, whether as owners or employees, could refuse to register with impunity, the wagering tax stamp would soon become of more interest to the stamp collector than to the tax collector.
 
 
 31
 Although the jury returned a verdict of not guilty on the conspiracy count, we do not feel that this ultimate result disposes of the argument. Taking the government's view of the case, as manifested by the conspiracy count, we look at the situation which would have confronted appellants had they agreed to form a conspiracy, at the moment when they should have registered and purchased a stamp.
 
 
 32
 In making the argument, appellants are repeating the essential argument made by Mr. Justice Black in his dissent in Lewis v. United States, supra, 348 U.S. at 423-425, 75 S.Ct. 415, which did not persuade the majority. Indeed, the appellants have sought to carve out a conspiracy exception to the constitutionality of the wagering tax statutes by remembering the emphasis in Kahriger and forgetting that in Lewis. For while Lewis reiterates the Kahriger point that the registration requirement was a prerequisite to future engagement in the business of wagering, it added the concept that the acts of registration and paying the tax were not compulsory. The Court said, 348 U.S. at 422, 75 S. Ct. at 417:
 
 
 33
 "If petitioner desires to engage in an unlawful business he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. If he does not pay the occupational tax, proceeds to accept wagers, and is prosecuted therefor, as in this case, he cannot be compelled to testify and may claim his privilege."
 
 
 34
 For the sake of argument, we may concede that registration of more than one person, manifesting intent to carry on a joint operation in wagering would constitute either a confession of a past act of entry into a conspiracy, violative of local law, or the furnishing of incriminatory evidence on a federal conspiracy charge. But, while such might be self-incrimination, it would not be compulsory. In such a case the prospective joint wagering entrepreneurs would have three choices: to register, purchase the stamp, and run the risks of investigation and prosecution under local lottery laws; to engage in the business without registering, preserve their privilege against self-incrimination, but run the risk of prosecution under the federal wagering tax laws; or, whatever conspiratorial plans had been laid, to take no further action, and to forego both the risks and the profits of the wagering occupation. Admittedly, these choices all have their price, but we are not dealing with an activity whose pursuit invokes a constitutional right or freedom.
 
 
 35
 The recent case, United States v. Costello, et al., 2 Cir., 1965, 352 F.2d 848, in upholding convictions under both individual and conspiracy indictments for violating the wagering tax laws, citing Lewis v. United States, supra, as compelling authority, said "* * * the probability of incrimination for future or even past acts, however great, is irrelevant on the Court's stated theory that the registration cannot be called compulsory." 352 F.2d at 851.
 
 
 36
 We find no error in the trial court's refusal to dismiss on this ground.
 
 III
 
 37
 These appellants finally contend that the counts on which judgments of guilty have been imposed were duplicitous, and should have been dismissed for this reason. The position of each appellant is that he has been charged in the same count as both a principal and an agent in receiving wagers, and therefore with two crimes.
 
 
 38
 These counts charged each appellant with having engaged "in the business of accepting wagers * * * and * * * in receiving wagers for or on behalf of a person liable for the tax on wagers imposed by 26 U.S.C. § 4401, having willfully failed, prior to engaging in said business * * * to pay the special occupational tax as required by 26 U.S.C. § 4411 * * *."
 
 
 39
 Appellants' argument is based on the different registration requirements applicable to principals and agents as set forth in 26 U.S.C. § 4412(a), paragraphs (2) and (3).[4] But the counts in question do not charge the appellants with failure to register as principal and agent. They charge the offense of failure to pay the special tax under Section 4411, which is quoted fully in footnote 1, supra. As the court said in United States v. Pasha, 7 Cir., 1964, 332 F.2d 193, 195, cert. denied, 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45, with reference to a similar count, "* * * the gravamen of the offense is the engaging in the business of accepting wagers either as principal or agent."
 
 
 40
 The present cases come within the authority of cases which state that where a statute specifies several ways in which an offense may be committed, they may be charged in one indictment or count, using the conjunctive to connect them. Arellanes v. United States, 9 Cir., 1962, 302 F.2d 603, 609, cert. denied, 1963, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238; Kitchens v. United States, 10 Cir., 1959, 272 F.2d 757, 760-761, cert. denied, 362 U.S. 942, 80 S.Ct. 809, 4 L.Ed.2d 772; Smith v. United States, 5 Cir., 1956, 234 F.2d 385, 389; Mellor v. United States, 8 Cir., 1947, 160 F.2d 757, 760-761; United States v. MacKenzie, D.Me., 1959, 170 F.Supp. 797.
 
 
 41
 Rule 7(c) of the Federal Rules of Criminal Procedure is applicable. It provides in part: "It may be alleged in a single count that the * * * defendant committed the offense * * * by one or more specified means." The note of the Advisory Committee to this rule states that it "is intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." 4 Barron & Holtzoff, Federal Practice and Procedure, § 1913, p. 60 n. 28.
 
 
 42
 We agree with the decision of the trial court in not dismissing these counts for duplicity.
 
 
 43
 Appellant Dwyer challenges count 2 of the information filed against him on the ground that a charge of willful failure "to register and to file returns as required by 26 U.S.C. § 4412 and regulations thereunder" encompasses more than one offense.
 
 
 44
 We agree with this contention. Section 4412 provides, in paragraphs (a) and (b), for the furnishing of initial registration information. Paragraph (c) provides for the furnishing of supplemental information.[5] The regulations (26 C.F.R. § 44.4412-1) require an initial return on a Form 11-c and subsequent returns, on the same form, marked "supplemental", ten days after a new employee is engaged to receive wagers or a registrant is engaged to work for a new employer.
 
 
 45
 It is clear that the statute and the regulations contemplate a series of returns, failure to file any of which would constitute an offense. It seems equally clear that proof of failure to file an initial return would differ from proof of later failures. It cannot reasonably be said that a failure to file a subsequently required "supplemental" return is simply a way or means of violating the requirement of initial registration. Cf. Bins v. United States, 5 Cir., 1964, 331 F.2d 390, cert. denied, 379 U.S. 880, 85 S. Ct. 149, 13 L.Ed.2d 87. Moreover, we cannot construe the count as referring only to the initial registration return, since it refers, in the plural, to "returns". The refusal to grant Dwyer's motion to dismiss this count was in error.
 
 
 46
 Judgments will be entered affirming the judgments against Geraghty, Maguire, Watson, and Yakabowicz, but setting aside the verdict and vacating the judgment against Driscoll, and ordering a new trial not inconsistent herewith. The judgment against Dwyer on Count 1 of the information against him is affirmed. The judgment against Dwyer on Count 2 is reversed, and the cause is remanded to the District Court with a direction to dismiss Count 2 of the information against Dwyer.
 
 
 
 Notes:
 
 
 [1]
 Section 4411 provides:
 "There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."
 
 
 [2]
 Appellants' reference to our opinions in DeCecco v. United States, 1 Cir., 1964, 338 F.2d 797, and Howard v. United States, 1 Cir., 1965, 345 F.2d 126, cert. denied 382 U.S. 838, 86 S.Ct. 86, 15 L. Ed.2d 80, are not in point. InDeCecco we reversed a trial court for taking an issue away from the jury and in Howard we sustained a judgment based on a jury's finding as to intent. Obviously, the juries in the cases before us had the ultimate duty to pass on the issue of willfulness. All we say here is that there was not, on the evidence, such a factual dispute as to require a lesser offense charge from the court.
 
 
 [3]
 This conclusion seems to be consistent with the recent action of the Supreme Court in remanding for reconsideration in the light of Sansone v. United States, supra, a request for a lesser-included offense instruction where the only evidence of knowledge and willfulness was circumstantial and possibly capable of more than one inference. Altiere v. United States, 86 S.Ct. 529 (U.S. Jan. 18, 1966)
 
 
 [4]
 The complete text of Section 4412 is the following:
 "(a) Requirement. — Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district —
 "(1) his name and place of residence;
 "(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and
 "(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person.
 "(b) Firm or company. — Where subsection (a) requires the name and place of residence of a firm or company to be registered, the names and places of residence of the several persons constituting the firm or company shall be registered.
 "(c) Supplemental information. — In accordance with regulations prescribed by the Secretary, he or his delegate may require from time to time such supplemental information from any person required to register under this section as may be needful to the enforcement of this chapter."
 
 
 [5]
 See fn. 3, supra