**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bobby R. CARPENTER, Defendant-
Appellant.**

**No. 17877.**

United States Court of Appeals
Sixth Circuit.

April 11, 1968.

3. Empey v. United States, 272 F.Supp. 851 (D.Colo.1967), appeal docketed, No. 9814, 10th Cir., Dec. 18, 1967.

H. Wayne Grant, Chattanooga, Tenn., for appellant; Williams, Grant & Clements, Chattanooga, Tenn., of counsel.

John H. Reddy, U. S. Atty., Chattanooga, Tenn., for appellee; Robert A. Scott, Asst. U. S. Atty., Chattanooga, Tenn., on brief.

Before O'SULLIVAN, PHILLIPS, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The defendant-appellant, Bobby R. Carpenter, worked for the operators of a numbers game in Chattanooga, Tennessee. He was placed under surveillance by federal officers, and on three occasions in April and two occasions in July, 1966, was observed as he travelled by automobile from Rossville, Georgia, to the headquarters of the numbers racket in Chattanooga. The Tennessee-Georgia state line separates the city of Chattanooga from the town of Rossville. Carpenter was indicted and convicted for violating the Travel Act, 18 U.S.C. § 1952, which prohibits travel in interstate commerce with the intent to promote or engage in illegal gambling activities.

It is admitted that Carpenter crossed the state line as charged in the indictment, and it is not denied that he was engaged in the operation of a numbers racket or lottery prohibited by the laws of Tennessee. Carpenter offered proof, which was not denied, that his permanent residence was at his mother's home in Chattanooga and that his trips to Georgia had no connection with his activities in the gambling operation. Carpenter and his wife were separated and under the order of custody he had the right to visit his minor son. His married sister lived in Rossville and at irregular intervals the child was brought to her home for short visits. On these occasions Carpenter stayed overnight there in order to be with his son. On the dates referred to in the indictment he was going from his sister's home in Georgia to his place of employment in Chattanooga. It is contended by Carpenter that the trips from Georgia back to Tennessee did not violate the Travel Act. There being no dispute about the facts, the case turns on whether he was entitled to a verdict of acquittal as a matter of law.

Carpenter relies on the line of cases of which Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), is typical. Mortensen and his wife operated a house of prostitution in Grand Island, Nebraska. They were making plans to visit Mrs. Mortensen's parents in Salt Lake City, Utah. Two of the prostitutes requested that they be permitted to go along as a vacation to them. The Mortensens agreed and the two girls accompanied them to Salt Lake City and returned with them to Nebraska. No prostitution was practiced on the trip but it was intended that the girls would resume their profession upon their return to Nebraska. The Mortensens were indicted and convicted for violation of the Mann Act. In reversing the judgment, the Supreme Court said:

> "An intention that the women or girls shall engage in the conduct outlawed by Section 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive for such interstate movement. And the transportation must be designed to bring about such result."

To the same general effect is Hansen v. Haff, 291 U.S. 559, 54 S.Ct. 494, 78 L.Ed. 968 (1934), and United States v. Hawthorne, 356 F.2d 740 (4th Cir. 1965), cert. denied, 384 U.S. 908, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966).

We do not consider those cases as controlling here. The reasoning in those cases is that the interstate travel was not directly connected with the illegal activity; or stated differently, the promotion of the illegal activity was not the dominant motive for the travel. In this case, Carpenter went directly from his sister's home in Georgia, where he was temporarily residing, to the gambling house in

Tennessee. The officers testified that occasionally he took a circuitous route, apparently in an effort to avoid surveillance. On one occasion, at a parking lot he picked up a woman who also worked in the gambling operation and took her to the gambling house.

So far as is shown by the record, Carpenter's only purpose in going from his sister's home in Georgia to his place of employment in Tennessee was to assist in the gambling operation. Certainly, the jury had the right to reach this conclusion. It may be conceded that, in going from Tennessee into Georgia to visit his son, his motives were commendable and that he violated no law; but he was not tried for going into Georgia. He was tried for making the trips from his sister's home in Georgia to the gambling house in Tennessee. The statute prohibits interstate travel with intent to "promote, manage, establish, carry on" an unlawful activity, including illegal gambling. We are of the opinion that the facts of this case meet the requirements of the statute. Compare United States v. Compton, 355 F.2d 872 (1966), where this Court upheld a conviction in somewhat similar circumstances.

The judgment is affirmed.