Max B. LEFFLER, Appellant,

v.

UNITED STATES of America, Appellee.

Clifford William CLOSE, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 19346, 19360.

United States Court of Appeals Eighth Circuit.

April 16, 1969.

9. 2 Freedman, Law of Marriage and Divorce in Pennsylvania, § 429 and § 465 particularly at n. 15 (1957).

Murry L. Randall, St. Louis, Mo., for appellants.

Jim J. Shoemake, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., St. Louis, Mo., with him on brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

Max B. Leffler and Clifford William Close, defendants, were convicted by a jury of traveling interstate from Illinois to Missouri with intent to commit extortion, a crime under Missouri statutes in violation of 18 U.S.C.A. § 1952.[1] The issues before this court are: (1) the propriety of the trial court's ruling in refusing to suppress certain evidence allegedly obtained in an illegal search and seizure; (2) the sufficiency of the evidence to sustain the convictions; and (3) asserted prejudicial comments and alleged misstatement of the evidence by the trial court during the course of final arguments by defendants' counsel. We affirm the judgments of conviction.

On the morning of October 31, 1967, defendants, both residents of Chicago, Illinois, appeared at the clinic of Dr. I. J. Hammond in Moberly, Missouri. Defendant Leffler, who first arrived, told the doctor's receptionist that he was a representative of General American Life Insurance Company and wanted to talk to the doctor about a patient. She advised that the doctor was out but would return to his office a little later. Both defendants then came to the clinic at about the time the doctor arrived, and upon telling the doctor that they wanted to talk to him privately, were led by him to the examining room. As they entered the examining room, Leffler gave the doctor a shove and Close closed the door.

Leffler then told the doctor they were police officers, indicating that Close was a detective from Illinois, and had a warrant for his arrest. Leffler showed the doctor a black leather case containing a detective badge on one side and a picture of Close on the other. The doctor questioned them about the contents of the warrant and Close purported to read from a warrant charging the doctor with causing the death of a girl, fourteen or fifteen years old, referred to as "Jane Doe" who allegedly died from treatment performed upon her arm by the doctor. Dr. Hammond asked defendants for the death certificate or a newspaper clipping relating thereto and asked Close to repeat the warrant. During this time the doctor started making notes.

It appeared obvious that the doctor was cognizant of the sham and Leffler then exclaimed, "Come on, come on, the doctor knows what it is all about and let's get going." Thereupon, Leffler jumped up and demanded $2500.00, but the doctor said he did not have that much money in the office and requested to be permitted to use the telephone to obtain it. The doctor, leaving the defendants in the examining room, then went to his adjoining office with the intention of getting a .45-caliber pistol out of his desk drawer. While pretending to use the telephone he discovered that his desk drawer containing the pistol was locked. He then reached for a shotgun on the wall, but in so doing knocked

1. 18 U.S.C.A. § 1952 provides:

"§ 1952.  Interstate and foreign travel or transportation in aid of racketeering enterprises

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

over two Neon light tubes which were resting against the wall. When this occurred, defendants fled from the examining room. At the doctor's direction, his receptionist went to the front door to observe where defendants had gone. She saw them enter a parking lot and reappear in a black car which she thought was a Dodge. The doctor got in his car to give chase and got close enough to determine that the car was a black Chrysler with Illinois license plates, the first three digits of the number being 744.

Because of the traffic, the doctor lost sight of defendants and returned to his clinic where he promptly called the police departments of both Moberly and Columbia, Missouri. He advised the police of what had occurred, giving the description of the car and the defendants, and also told the Moberly police chief of the black leather case containing the police badge and the warrant. Police officers from the Columbia police department were given defendants' descriptions and instructed to arrest them. One squad car was sent to Highway 63 leading from Moberly into Columbia as defendants were believed to be heading that way. A short distance out of Columbia the car and defendants were sighted on narrow Highway 63 close to its intersection with an interstate highway. Upon signal from the police, the defendants stopped their car as far as possible onto the shoulder without driving into the ditch. Nevertheless, the car was stopped close to a curve on a narrow highway and in this position interfered with traffic, creating an unsafe situation. By reason of this traffic condition, as well as the fact that it was drizzling rain, the officers, after arresting defendants, concluded to take defendants and their car to the Columbia police station. It took about ten minutes for the party to drive to the Columbia police station and there one of the detectives in the presence of defendants searched the interior of the car. He found a leather case with the badge and a brown envelope containing a blank

warrant, both in plain view over the driver's sun visor. These articles became Exhibits 2 and 4 respectively. The Columbia arresting officer, who rode with Leffler from the scene of the arrest to the Columbia police department and observed the search, testified that the corner of the badge inside the badge case, and the envelope were plainly visible prior to the search. The officers did not take the articles at that time but replaced them as they had found them and notified the Moberly police department that they had the suspects and the car. The questioned articles and the defendants were held until the arrival of the Moberly police, a matter of about forty-five minutes.

The Columbia police apprised the Moberly police of the brown envelope and badge case which remained in plain view over the sun visor, and the Moberly police took the defendants and their car with the articles to Moberly where the car was locked and the defendants taken into the jail. The Moberly officer who drove the defendants' car from Columbia to Moberly testified that the articles were visible at all times and that he did not move them. The chief of police, upon his return from lunch a short time later, called the prosecuting attorney, telling him that the badge case and envelope were clearly visible from the outside of the car and the prosecutor advised that under the circumstances the Moberly police did not need a search warrant. Thereupon, the chief of police unlocked the car and removed the badge case and envelope. These happenings at Moberly occurred within two or two and one-half hours of the time defendants had been apprehended by the Columbia police.

### Motion to Suppress.

The trial court upon hearing suppressed certain of the Government's exhibits, but denied the motion to suppress relating to Exhibit 2, the badge case with the badge, and Exhibit 4, the envelope containing the warrant. Error is asserted as to this action of the

trial court, based primarily on the case of *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The thrust of defendants' argument is centered entirely on the asserted search and seizure at Moberly, completely *ignoring the fact that the defendants were apprehended and arrested* by the Columbia police and that the items in question were discovered in plain view over the sun visor by the Columbia detective *who searched the car* in the presence of defendants at the police station, about ten minutes after the arrests.

Additional to the reliance on *Preston*, defendants cite courts of appeals cases that encompassed facts somewhat similar to *Preston*, but the facts here simply do not fit *Preston*. First, the argument completely ignores the original apprehension of defendants and the search subsequent thereto, and, second, cannot be equated with *Preston* because, unlike *Preston*, here the police officers had been advised of the crime defendants had committed as well as the fact that defendants utilized the badge and the warrant in attempting to perpetrate the crime. In *Preston*, defendants were arrested for vagrancy because they created suspicion when they were parked in the business district between 10:00 p. m. and 3:00 a. m. without a reasonable explanation. They were taken to the police station and later police searched their car and found burglar's tools, guns, and disguise paraphernalia. It was only then that the police actually knew that a serious crime was even contemplated.

The exhaustive opinion of this court in *Theriault v. United States*, 401 F.2d 79 (8th Cir. 1968), nearly embraces the complete answer to *every search and seizure argument defendants raise here.* This opinion discusses probable cause, the plain sight doctrine and reasonable searches incidental to a lawful arrest.

■ There can be no question here that the police officers making the arrests near Columbia had probable cause. The Columbia officers knew the crime had been committed; that defendants fitted the descriptions of the perpetrators; and that the automobile was of the make described and bore an Illinois license plate with the first three digits equating with the plate on the automobile used in defendants' flight from the scene of the crime; and, further, they knew that defendants had used a phony police badge and warrant in attempting to commit the crime. Thus, *the officers could make a search of the car and defendants without a* warrant incidental to the lawful arrests. *Ker v. California*, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

We have many times held, as have other courts, that a search and seizure do not necessarily have to be accomplished precisely and immediately upon the arrest of the accused or precisely at the scene of the arrest to be incidental to the arrest. In addition to *Theriault v. United States, supra*, see and compare *Moodyes v. United States*, 400 F.2d 360, 362 (8th Cir. 1968); *Feinstein v. United States*, 390 F.2d 50, 53 (8th Cir. 1968), cert. denied, *Jackson v. United States*, 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405 (1968); *Harris v. Stephens*, 361 F.2d 888 (8th Cir. 1966), cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967); *Morris v. Boles*, 386 F.2d 395 (4th Cir. 1967), cert. denied *Morris v. Coiner*, 390 U.S. 1043, 88 S.Ct. 1640, 20 L.Ed.2d 304 (1968); *United States v. Evans*, 385 F.2d 824 (7th Cir. 1967); *United States v. Dento*, 382 F.2d 361, 365 (3rd Cir. 1967), cert. denied, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967); *Maltos-Roque v. United States*, 381 F.2d 130, 132 (5th Cir. 1967); *Boyden v. United States*, 363 F.2d 551, 553 (9th Cir. 1966), cert. denied, 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440 (1966); *Price v. United States*, 121 U.S. App.D.C. 62, 348 F.2d 68, 70 (1965), cert. denied, 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965).

*Evans, supra*, is basically on all fours with the case at bar. Evans was arrested in Chicago while getting into his car. The officers started a search of his

automobile at the place of arrest, but when a crowd started to gather they took defendant and his automobile to the Federal Building, some fifteen or twenty minutes away. Upon their arrival at the Federal Building, officers immediately searched the automobile in the presence of defendant and discovered incriminating evidence. The trial court denied defendant's motion to suppress this evidence because the arresting officers knew that a warrant had been issued for Evans' arrest and because the officers reasonably concluded that the search of the automobile should not be continued at the place of the defendant's arrest on account of the crowd that gathered. In *Evans*, as in the case at bar, the defendant relied upon *Preston*. See also Morris v. Boles, *supra*.

█ In the instant case we hold that the arresting officers acted reasonably due to the traffic and weather conditions in taking defendants and their car to the police station prior to conducting a search if, in fact, a search was necessary to obtain the exhibits or evidence in question since the evidence was in plain sight of the officers prior to the search.

█ After the Columbia police had conducted their search the exhibits in question were replaced over the sun visor in their original location in plain view and the car and its contents along with defendants were delivered to the Moberly police when they arrived at Columbia. The Moberly police then transported defendants, the car and its contents to Moberly. Upon their arrival at Moberly, defendants were escorted into the police station and the car was locked. The Moberly chief of police, upon his return from lunch, looked in the car and saw the exhibits over the sun visor where he had been told by the other officers they would be found. Actually, in Moberly there was no search involved relative to the exhibits with which we are concerned since the action of the Moberly chief of police was nothing more than the continuation of the police action commenced upon the original apprehension of defendants. See: United States v. Theriault, 268 F. Supp. 314 at 324 (W.D.Ark.1967), aff'd, 401 F.2d 79 (8th Cir. 1968). It is our opinion that the search and seizure were lawfully completed by the Columbia officers incidental to the arrests and the effect of handing the car and contents over to the Moberly police with the questioned exhibits in their original location over the sun visor was no different than would have been a seizure of the exhibits by the Columbia police, their marking of the same for identification purposes and hand delivery thereof to the Moberly police. The law does not require such foolishness as separate searches and seizures by various law enforcement agencies any more than it does by different echelons of such an agency. We must bear in mind that the Fourth Amendment denounces only unreasonable searches and seizures, and if the criminal laws of this country are to be enforced and law-abiding citizens protected care should be taken not to place a doctrinaire or hypertechnical interpretation upon the plain and simple language of the Constitution in our zeal to protect the rights of those charged with crimes.

█ Assuming arguendo that our only concern was with the actions of Moberly Police Chief Slavens, we would nonetheless be compelled to the conclusion that there existed no illegal search or seizure. The evidence in question was first observed in plain view over the sun visor by the arresting officer. The Columbia police officer who conducted the search testified that he saw the articles prior to the search and replaced them in their original position. The Moberly officer who drove defendants' car from Columbia to Moberly testified that the articles were in plain view at all times, and Chief Slavens testified that he could plainly see the articles in question from outside the car. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that

view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). The action of Chief Slavens complied in all respects with the *Harris* rule as he was outside the car when he saw the articles in plain view that he knew were instrumentalities of the crime. See also Ker v. California, *supra;* Theriault v. United States, *supra;* Harris v. Stephens, *supra.*

Defendants argue that there was sufficient time to obtain a search warrant before removing the articles in Moberly. "The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest." Ker v. California, *supra,* 374 U.S. at 41, 83 S. Ct. at 1634. Under the facts of this case no search warrant was needed and the actions of the police officers were fully justified.

In our view, under any one of the theories the arrest, search and seizure were valid and defendants' contentions border on the frivolous. Issues such as this must be decided on the facts and circumstances in each particular case. Golliher v. United States, 362 F.2d 594, 601 (8th Cir. 1966); Kernick v. United States, 242 F.2d 818, 820 (8th Cir. 1957). Our conclusion is that the trial court here properly permitted the introduction of Exhibits 2 and 4.

### Sufficiency of the Evidence.

Defendants argue that the evidence was insufficient because the proof failed to show beyond a reasonable doubt that defendants possessed the requisite intent to extort money from Dr. Hammond at the time they left Illinois and traveled to Missouri. In support of their argument, defendants rely upon the case of United States v. Hawthorne, 356 F.2d 740 (4th Cir. 1966), cert. denied, 384 U.S. 908, 86 S. Ct. 1344, 16 L.Ed.2d 360 (1966). In *Hawthorne,* however, the court found that the defendant traveled interstate for the purpose of moving his family from Indiana to West Virginia and that this travel was not sufficiently related to defendant's gambling enterprises in which he was engaged to constitute a crime under 18 U.S.C.A. § 1952. Thus, *Hawthorne* appears to be patently distinguishable from the case here. A defendant's intent is a fact question and, therefore, one for the jury's determination. In a criminal case a defendant's intent is obviously not usually susceptible of proof by direct evidence. In most cases it must be inferred from the facts and circumstances of the particular case. We said in Brennan v. United States, 240 F.2d 253, 260 (8th Cir. 1957), cert. denied, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723 (1957):

"The condition of the mind is rarely susceptible of direct proof but it depends upon many factors. It may be inferred from outward acts and attending circumstances."

In the case of Wiley v. United States, 257 F.2d 900 (8th Cir. 1958), we said at page 906:

" * * * It is well settled that the purpose for which the interstate transportation is induced may be inferred from the conduct of the parties within a reasonable time before and after the transportation. * * * 'Obviously an accused will not himself disclose his intent. * * *' "

See also and compare Morissette v. United States, 342 U.S. 246, 274, 72 S. Ct. 240, 96 L.Ed. 288 (1952); Coil v. United States, 343 F.2d 573 (8th Cir. 1965), cert. denied, 382 U.S. 821, 86 S. Ct. 48, 15 L.Ed.2d 67 (1965); Jackson v. United States, 330 F.2d 679, 681 (8th Cir. 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964); Black v. United States, 309 F.2d 331, 337 (8th Cir. 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963); Eastman v. United States, 153 F.2d 80, 83 (8th Cir. 1946), cert. denied, 328 U.S. 852, 66 S.Ct. 1342, 90 L.Ed. 1625 (1946); United States v. Luxenberg, 374 F.2d 241, 249 (6th Cir. 1967); Van Nattan v.

United States, 357 F.2d 161 (10th Cir.. 1966).

Since defendants offered no evidence, it is undisputed that they lived in Chicago, Illinois on October 31, 1967; that they were in Dr. Hammond's office on the morning of October 31, 1967 where they made an attempt to extort money from him, a crime under Missouri statutes; that they used an Illinois police badge and a City of Chicago blank warrant in their attempt to extort the money; that they drove a car with an Illinois license plate on it; that they had an Illinois driver's license with the police badge; that while attempting to extort money from Dr. Hammond they told him he caused the death of a fourteen or fifteen year old girl who died in Illinois; and that Leffler identified Close as an Illinois detective.

■ As defendants offered no evidence in their behalf, they necessarily are forced to base their argument upon the cross-examination of one of the Government witnesses who had been produced to show that Close lived in Chicago, and who testified upon cross-examination that he had heard that defendant Close at some time (he did not know the date) had gone to St. Loius for the burial of his father. There was no evidence that related that occurrence, if it did occur, to the date of the crime, which was not in St. Louis but in the Town of Moberly, Missouri. Even if there had been direct evidence of the fact that Close had gone to Missouri for any legitimate purpose, it would still present a question for the jury's determination rather than that of a reviewing court.

■ The Government could have hardly presented a stronger case. Convictions have been upheld on this point even where evidence was adduced that the trip was made for lawful purposes. United States v. Carpenter, 392 F.2d 205 (6th Cir. 1968). It is elementary that we, in testing the evidence to determine its sufficiency, must consider it in the light most favorable to sustaining the verdict of the jury. Coil v. United States, *supra*, 343 F.2d at 575. "In few areas is the admonition to give proper deference to the jury's findings of fact more compelling than in the necessarily subjective area of intent." Howard v. United States, 345 F.2d 126, 129 (1st Cir. 1965), cert. denied, 382 U.S. 838, 86 S.Ct. 86, 15 L.Ed.2d 80 (1965).

■ In our view, the evidence here amply supported the jury's finding.

*Comments of the Trial Court during the Final Argument of Counsel for Defendants.*

It is finally urged that the trial court committed reversible error because of certain comments made during the closing arguments. On cross-examination of Jacob Werneth, the owner of an apartment building in Chicago in which defendant Close resided, Mr. Werneth stated that he had heard that Close went to St. Louis to attend his father's funeral but that he did not recall the date and that he did not know when defendant Close was last in Chicago prior to October 31, 1967. Counsel for defendants in his argument to the jury made the following statement:

> "Now, what was the proof? Well, the proof was that these two defendants lived in Illinois, and, secondly that Mr. Close came to St. Louis to attend his father's funeral."

At this juncture, the Government attorney objected and the court said, "I don't think there is any evidence of that, Mr. Randall * * * He merely testified that his father died, and there were no dates or anything established. Go ahead." When defendant's counsel continued his argument and another objection was made, the court made the following statement to the jury:

> "Members of the Jury: Argument of counsel is to aid you in arriving at a proper verdict. You heard the evidence, and you will be guided by the evidence as you remember it to be, not how counsel says it was. All right. Proceed."

**52**

The witness Werneth actually had not testified that defendant Close had gone to St. Louis to attend his father's funeral and it was never established that he did in fact go to St. Louis for such a purpose, or if so, whether the date related in any way to the commission of the crime. Thus, the court did not make an improper statement, but even if it had, such statement could not possibly have been prejudicial to the defendants in this situation because of the court's prompt instruction to the jury to be guided by the evidence as they remembered it. It is fundamental that a federal trial court can comment on the evidence and that its discretion in controlling argument is wide, and there must be clear abuse before any such discretion will be upset. The court can comment on the evidence and even express its opinion as long as it is made clear that the ultimate fact determination is for the jury. More than forty years ago this court said in Buchanan v. United States, 15 F.2d 496, 498 (8th Cir. 1926):

> "Under the rule, as stated and applied by the Supreme Court, it seems that, when a judge expresses his opinion as to the facts to the jury, making it clear that it is nothing but his opinion, and not binding upon them in any way, and that it is their duty and responsibility to determine all of the facts, he is within his rights, and that he is only subject to reversal when his comments upon the evidence or opinion as to the facts amount to partisan argument or advocacy, or constitute an appeal to passion or prejudice."

We later quoted the above extract with approval in Kansas City Star Co. v. United States, 240 F.2d 643, 665 (8th Cir. 1957), cert. denied, 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957).

The case relied upon by defendants, Holt v. United States, 267 F.2d 497 (8th Cir. 1959), is distinguishable because there the trial court clearly misstated the testimony.

The evidence of defendants' guilt could hardly be stronger. The judgments of convictions are affirmed.