UNITED STATES of America, Appellee,

v.

**Dedrick Danual MAYS, Appellant.**

No. 92–1706.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Jan. 4, 1993.

Andrew S. Birrell, Minneapolis, MN, for appellant.

Christopher J. Bebel, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

A jury convicted Dedrick Mays of possession with intent to distribute cocaine base and conspiracy to possess cocaine with intent to distribute. Mays appeals his conviction, arguing that the district court[1] violated his Fourth Amendment rights by erroneously admitting evidence obtained by a search and seizure of his automobile and by admitting statements he later made to the police about the evidence. We affirm.

## I.

On October 19, 1991, a reliable confidential informant informed the Minneapolis, Minnesota, police department that he had arranged to purchase drugs that day. The informant told police that he was to meet an individual known to the informant as "D" or "Little D" in a parking lot in downtown Minneapolis where the drug sale would take place. The informant drove his vehicle into the parking lot and waited while the police surveyed the scene.

Shortly after 4:00 p.m., Mays drove into the lot, parked his car, and then entered the informant's vehicle. Moments later, the informant gave police a prearranged signal that he had seen cocaine base. Police officer Melvin Ferguson approached the informant's car, identified himself as a police officer, and arrested Mays. At the time of the arrest, Officer Ferguson saw two small plastic bags of what appeared to be cocaine base in Mays' immediate vicinity.

After the arrest, Officer Ferguson placed Mays in Officer Bruce Folkens' unmarked police car. Officer Michael Strauss, a twenty-three-year police veteran who had worked narcotics cases for eighteen years, ordered a search of Mays' car. Officer Ferguson and other officers who had arrived on the scene began the search and quickly discovered additional cocaine base under the driver's seat.

The defendant's car was parked in a public parking lot and a crowd had developed at the arrest site. The police officers decided to move Mays' car to a police station nearby. Officer Ferguson drove Mays' car approximately six blocks to the police facility where he then resumed the search. Officer Ferguson found a loaded revolver tucked between two back seat cushions.

Following his arrest, Mays was given *Miranda* warnings. Mays, however, freely discussed his drug selling business with Officer Folkens in the unmarked car. After the additional cocaine base and handgun were recovered from Mays' car, Officer Ferguson announced over police radio the results of the search. In response to this, Mays stated that he had brought one additional ounce of cocaine base in case the purported buyer wanted more than just the two ounces he originally had ordered. Mays denied any knowledge of the firearm.

Mays was indicted for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for using a firearm in connection with a drug transaction in violation of 18 U.S.C. § 924(c). Prior to trial, the defense moved to suppress the evidence found as the product of an unconstitutional search. The defense argued that Mays' statements relating to that evidence should also be sup-

---

1. The Honorable Edward J. Devitt, deceased, Senior United States District Judge for the District of Minnesota, presided at the trial. The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota, presided at the sentencing.

pressed as derivative evidence. These motions were denied. At trial, the prosecution presented evidence of the items found in the search and evidence of Mays' statements regarding the evidence. Mays was convicted of the two distribution charges, but acquitted of the firearms charge.

## II.

■ Mays argues that the warrantless search of his car violated the Fourth Amendment. He argues that the search was not reasonable because it was warrantless and because the police had no basis for seizing the vehicle and conducting a search. He also contends his statements about the evidence should be inadmissible as derivative of the unconstitutional search.

■ We note at the outset that "[t]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures.'" *South Dakota v. Opperman*, 428 U.S. 364, 372–73, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 509–10, 91 S.Ct. 2022, 2059–60, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting)). The standard for determining the validity of a warrantless search of an automobile is whether, in that particular case, the search was reasonable under all the circumstances. *United States v. Lawson*, 487 F.2d 468, 473 (8th Cir.1973); *see also Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (courts must look to the facts of the case to see if an exception may be made to the general rule that a search warrant must first be obtained).

■ The district court, in its pretrial motion, held that the search was a justifiable exception to the warrant requirement because it was an inventory search of the vehicle. When analyzing the constitutionality of inventory searches, courts must use the Fourth Amendment's reasonableness standard. *United States v. Rabenberg*, 766 F.2d 355, 357 (8th Cir.1985). We review the district court's denial of Mays' suppression motion for clear error. *United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989).

In this case, there are many factors that support the reasonableness of the search. First, one of the reasons for an inventory search is to protect the public and the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 373, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987). In the interest of public safety, police must often play a caretaking role. *Opperman*, 428 U.S. at 368, 96 S.Ct. at 3096. Mays' car was parked in a public lot and a crowd had gathered at the site of the arrest. The experienced police officers at the scene later testified that there was a high likelihood that additional drugs and/or firearms would be in Mays' vehicle. The police made an informed and reasonable decision to search the car and exercise their custodial duty immediately under the circumstances. It was entirely appropriate and reasonable for the police to conduct an inventory search of the car to ensure that any dangerous instrumentalities did not fall into another person's hands. *Opperman*, 428 U.S. at 376 n. 10, 96 S.Ct. at 3100 n. 10.

Second, the police were operating under standard, established procedures. The Supreme Court has specifically held that inventory searches conducted pursuant to standard police procedures are reasonable. *Id.* at 372, 96 S.Ct. at 3098. "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment. . . ." *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742. Mays' car was to be towed to an impound lot pursuant to police department policy. The police in this case conducted an inventory search prior to impoundment. This was done according to reasonable, standard department procedures. Such procedures are established, in part, to ensure that the owner's property is adequately accounted for and that potential ownership disputes over lost or stolen property may be minimized. *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097. Furthermore, the Supreme Court has upheld the reasonableness of vehicle inventory searches conducted pursuant to standard procedures even before the car has

**322**

been impounded. *Bertine,* 479 U.S. at 372–73, 107 S.Ct. at 741–42.

 Finally, public policy considerations support the reasonableness of the search. The court must "weigh the governmental interests advanced by an inventory search against the privacy interests invaded in light of the particular circumstances of the case." *United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir.1980). It is well established that an individual has a lesser expectation of privacy in one's car than in one's home or office. *Opperman,* 428 U.S. at 367, 96 S.Ct. at 3096. *See, e.g., Cardwell v. Lewis,* 417 U.S. 583, 589, 94 S.Ct. 2464, 2468–69, 41 L.Ed.2d 325 (1974); *Cady v. Dombrowski,* 413 U.S. 433, 439–40, 93 S.Ct. 2523, 2527–28, 37 L.Ed.2d 706 (1973); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970). Furthermore, police officers may search the passenger compartment of an arrestee's vehicle as a valid, warrantless search incident to arrest. *Leffler v. United States,* 409 F.2d 44, 48 (8th Cir.1969). Such a search can be reasonable even when the suspect no longer occupies the vehicle. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. Valiant,* 873 F.2d 205, 206 (8th Cir.1989). Additionally, the search may be valid even when it is not done contemporaneously with the arrest. *Leffler,* 409 F.2d at 44. Accordingly, whatever privacy interest Mays had in the contents of his car was very limited in this situation.

It was entirely reasonable for the officers to initiate an inventory search of the vehicle at the arrest site in the interest of their own and the public's safety. When a crowd gathered at the site, the potential threat to the public safety was augmented. Moreover, the undercover police officers needed to protect their own identity and safety. The decision to move the vehicle to a secure location was completely appropriate under the circumstances and the moving of the car in no way vitiated the reasonableness of the search. The policies in favor of conducting the search vastly outweigh the diminished privacy interests that

Mays had in his vehicle after he had been arrested.

### III.

For the foregoing reasons, we conclude that the district court was not clearly erroneous in admitting the evidence resulting from the search. Furthermore, because the evidence resulting from the search was properly admitted, the district court was not clearly erroneous in admitting Mays' statements about the evidence found in the search. Mays' convictions are affirmed.