**UNITED STATES of America,
Plaintiff,**

v.

**Jesse HEPHNER and Shannon Wayne
Kramarczyk, Defendants.**

**No. CR 02–0023 LRR.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

May 8, 2003.

Daniel C. Tvedt, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

David Nadler, Johnston & Nathanson, PLC, Cedar Rapids, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER ON OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDATION

READE, District Judge.

### TABLE OF CONTENTS

I. STANDARD OF REVIEW ............................................. 767

II. FACTS ......................................................... 767

III. DISCUSSION .................................................. 770
 A. Initial Stop ................................................ 770
 B. The Searches ............................................... 771
 1. Scope of the Consent to Search the Truck ............................ 771
 2. Consent to Search the Toolbox in the Truck .......................... 772
 a. Scope of the Consent to Search Toolbox ........................... 773
 b. Actual Authority to Search Toolbox ............................. 773
 c. Apparent Authority to Search Toolbox ........................... 775
 d. Implied Consent to Search Toolbox .............................. 776
 3. Length of the Stop ...................................... 776
 4. Certification of the Canine ................................. 776
 C. Hephner's Statements ...................................... 777
 1. Whether Hephner Was "In Custody" .............................. 778
 2. Whether Hephner Waived His Right to Consult Counsel .................. 779

IV. CONCLUSION .................................................. 779

This matter is before the Court on Jesse Hephner's and Shannon Wayne Kramarczyk's objections to the Report and Recommendation of Magistrate Judge John Jarvey [docket no. 39] on Defendants' Motions to Suppress.

Jesse Hephner ("Hephner") filed Motions to Suppress on May 30, 2002 and

June 4, 2002. Magistrate Judge Jarvey held an evidentiary hearing on the motions on June 24, 2002. Following the hearing, it was revealed for the first time that videotapes of the traffic stop in question had been made. Hephner moved for further hearing on his Motions to Suppress. Shannon Wayne Kramarczyk ("Kramarczyk") joined in Hephner's Motions to Suppress on July 26, 2002. Pursuant to Hephner's request, Magistrate Judge Jarvey took additional evidence on the Motions to Suppress on October 10, 2002. On January 21, 2003, Magistrate Judge Jarvey issued a Report and Recommendation that the Motions to Suppress be denied.

This Court held a hearing on the Report and Recommendation on April 2, 2003 because it appeared to the Court that defense counsel was raising an objection on appeal that had not been raised and fully litigated before Magistrate Judge Jarvey. Kramarczyk's attorney, Jane Kelly, objected to the hearing, arguing that she had raised the issue before the magistrate judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the district court is to make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which the defendant objects.

## I. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) provides that the district judge shall reconsider any pretrial order where the movant succeeds in showing that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(C) provides that the district judge shall make a *de novo* determination of those portions of the report or recommendation to which the movant objects. *See also United States v. Felipe Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). The district judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. The district court judge may also receive further evidence or recommit the matter to the magistrate with instructions. 28 U.S.C. § 636(b)(1).

Defendants have made specific, timely objections in this case; therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required. *See* 28 U.S.C. § 636(b)(1).

## II. FACTS

The facts as found by Magistrate Judge Jarvey are undisputed by the parties. The Court finds the facts as follows:

This case originated following a traffic stop in the Northern District of Iowa. On April 3, 2002, at approximately 10:30 a.m., Defendants were stopped by Iowa State Troopers while traveling east in a truck on Interstate 80 near the Little Amana, Iowa exit. Jesse Hephner was a passenger in a truck driven by Shannon Kramarczyk. Prior to the stop, the Iowa State Patrol had received information from Wisconsin law enforcement alerting them that a particularly-described truck registered to Kramarczyk would be passing through Iowa in route to Wisconsin from California. The truck was reported to be carrying cocaine to Wisconsin. Wisconsin law enforcement described the vehicle as a black Dodge truck bearing Wisconsin license plate number 396702 with a yellow stripe and many after-factory add-ons. Wisconsin law enforcement indicated that the truck might have a loud exhaust system. Kramarczyk's truck matched the description given by Wisconsin law enforcement, right down to the license plate. The information from Wisconsin advised the Iowa troopers to "make your own case," meaning that Wisconsin law enforcement officers were unable to supply specific grounds for a traffic stop.

Iowa State Troopers Adkins and Snedden received a cell phone call from Iowa State Trooper Rozendaal in which they were apprised of the information from Wisconsin law enforcement. Troopers Adkins and Snedden positioned their patrol cars in the median of Interstate 80 to enable them to monitor eastbound traffic. While the troopers were sitting in Trooper Adkins' car, a truck matching the description of the wanted truck passed them. The muffler was loud enough that Trooper Adkins was able to hear the truck's exhaust system as it went by, even with the patrol car windows rolled up and with his car radio on. In his opinion, the muffler was excessively loud and the truck was in violation of an Iowa law prohibiting excessively loud exhaust systems. Trooper Snedden got out of Trooper Adkins' car and into his own car. Trooper Adkins pursued the truck and stopped it in approximately four miles. Trooper Snedden arrived at the scene of the stop shortly thereafter.

Kramarczyk was identified as the driver of the truck. Hephner was the passenger. Kramarczyk was separated from Hephner and each was asked questions by Troopers Adkins and Snedden. Hephner and Kramarczyk gave conflicting accounts of where they had been and why they had been there. Hephner claimed to be coming back from Reno, Nevada. He stated that he had lost his job and he and Kramarczyk had gone to Reno to gamble. Kramarczyk admitted he owned the truck. He told the troopers that he and Hephner (his cousin) had been in Wyoming visiting a friend for Easter vacation. Kramarczyk was unsure of the name of the town in Wyoming and stated that he and Hephner were on their way back to Wisconsin.

As soon as Kramarczyk got into Trooper Adkins' patrol car, Trooper Adkins informed Kramarczyk that he was being given a warning for an excessively loud exhaust system. Trooper Adkins told Kramarczyk that he could hear it over the sound of his radio as the truck passed him on the highway. Following a discussion about registration papers, Kramarczyk told the trooper that his cousin had been stopped for the same offense but that his cousin's truck was a lot louder. He then told Trooper Adkins that he had put on "resonated tips" to quiet the muffler. Approximately seven minutes after the stop began, Trooper Adkins requested the passenger's identification. An extended search for a current registration for the truck began nine minutes after the car was stopped. Twelve minutes after the stop, Trooper Adkins noted that the driver did not have proof of insurance and that this infraction would be added to the warning ticket. Pursuant to a question by Kramarczyk, Trooper Adkins examined some papers to determine what the requirement was in Wisconsin regarding carrying proof of insurance. Fourteen minutes after the stop, Kramarczyk was given the warning ticket.

Immediately after Kramarczyk got the warning ticket, Trooper Adkins asked if Kramarczyk had anything illegal in the truck. Kramarczyk said that he did not. When asked whether it would be okay to search the truck, Kramarczyk unequivocally stated, "Sure, go ahead." Kramarczyk then signed the consent to search form (Government Exhibit 1) at 10:45 a.m. and the search began.

While Adkins was talking with Kramarczyk, Iowa State Trooper Hernandez, a K-9 officer, came to the scene with his drug dog, Woody. Within minutes after consent to search was given, Trooper Hernandez directed Woody to the truck. Woody gave a positive indication for narcotics inside the truck and near a duffel bag in the bed of the truck. After the dog alerted to the truck, the troopers decided it would be

safer to continue the search of the truck at an Iowa Department of Transportation ("DOT") maintenance garage in Oakdale, Iowa. Iowa State Trooper Rozendaal arrived on the scene to assist. The troopers testified that the garage was approximately 15 miles east of the point of the traffic stop on Interstate 80. Kramarczyk and Hephner were not asked whether they were willing to go to Oakdale; however, Kramarczyk assisted Trooper Adkins in finding the keys to the truck and gave him advice as to how to drive it. Neither subject offered any objection to the change in location for the search.

Trooper Adkins transported Kramarczyk and Trooper Snedden transported Hephner to the Oakdale DOT facility. Neither individual was handcuffed for the trip. Trooper Rozendaal drove Kramarczyk's truck. While in route to the Oakdale garage, Trooper Adkins talked to Kramarczyk about the discrepancies in the stories he and Hephner had given. Trooper Adkins testified that Kramarczyk became visibly nervous and said, "Well did Jesse tell you that we were in California to see his friends and not mine. I don't know what you think you will find, but if you do find anything I can guarantee that it is Jesse's and not mine."

When Trooper Snedden arrived at Oakdale, Hephner asked him what the dog had done in the truck. Trooper Snedden told Hephner that the dog alerted to areas of the truck which indicated there were narcotics present. When asked if there was anything he wanted to say, Hephner handed Trooper Snedden a contact lens carrying case. Hephner said that it was his case and it contained cocaine residue. Hephner also said that some of the contents may have spilled in the areas that the dog alerted to in the truck. Trooper

Snedden testified that he thanked Hephner for his honesty and then started the search of the truck.

While searching the truck, Woody alerted to a large red toolbox in the back of the truck.[1] Defendant Hephner admitted that it was his toolbox and that he would have to look for the key. Trooper Snedden handed Hephner his duffel bag (the same bag the drug dog had alerted on). Hephner searched the duffel bag for the key and went through the pockets in his pants. When the key was not found, Hephner stated that he must have lost it in Reno.

The troopers called a locksmith to the DOT garage to unlock the toolbox. Neither Hephner nor Kramarczyk requested that the search be stopped. At 12:36 p.m. the toolbox was opened and revealed tools, a welder's coat, approximately 20 pounds of marijuana, and approximately 482.7 grams of cocaine. Kramarczyk and Hephner were handcuffed, given *Miranda* warnings at about 1:05 p.m. and transported to the Johnson County Sheriff's Department.

At 1:55 p.m. Hephner signed a statement acknowledging that he had been advised of his rights and agreed to answer some questions. Hephner then requested that he be allowed to call a lawyer. He was provided access to a phone and apparently called a lawyer in California. The police officers in the room at the time of the telephone call did not leave the room. The three officers that testified at the suppression hearing said that they were "in and out of the room" and "milling around" while Hephner made his phone call. Hephner was shown a statement given by Kramarczyk and indicated that it was the truth. Special Agent Cavanaugh of the Federal Drug Task Force talked

---

**1.** The record, including the video tape, does not clearly indicate whether the toolbox was a truck accessory bolted to the truck or whether it was a free standing toolbox. In this ruling the Court assumes it was not a part of the truck.

with Hephner about cooperating with them in a controlled buy of narcotics in Wisconsin. When Hephner stated that he was not interested in cooperating, the interview ended.

At the suppression hearing, Kramarczyk called a manager of a local muffler repair shop as a witness. The muffler shop manager inspected the truck at issue and concluded that the truck's exhaust system was louder than normal, but in his opinion, was not excessively loud. There were no objective tests performed by the government or by Defendants on the truck's exhaust system.

At the April 2, 2003 hearing on the Report and Recommendation, Woody's handler, Iowa State Trooper Jesse Hernandez, testified that he and his drug dog, Woody, were involved in the stop and search of Kramarczyk's truck and Hephner's toolbox on April 3, 2002. Trooper Hernandez, who has been a Trooper with the State of Iowa for sixteen years, has been Woody's handler since August 1999. Trooper Hernandez and Woody initially went through an eight-week course in Lincoln, Nebraska, with the Nebraska state patrol K-9 judge. Woody was certified in 1999 in his patrol dog assignments, which include tracking, evidence recovery, building searches, and narcotics. Woody was trained to locate marijuana, methamphetamine, cocaine, and heroine. Each year, Woody undergoes a one-week long recertification. Woody has consistently passed his yearly recertification. Trooper Hernandez testified that as of April 3, 2002, Woody had over 700 sniffs. He also testified that approximately eighty percent of the time when Woody gives an indication for narcotics, narcotics are actually found. When Woody gives an indication for narcotics and narcotics are not found, it is unknown whether narcotics were there previously and removed prior to Woody's alert.

## III. DISCUSSION

Defendants make three objections regarding Magistrate Judge Jarvey's Report and Recommendation: (1) the initial stop of the vehicle was not justified; (2) the search of the vehicle and its contents was illegal; (3) Hephner's statements made to law enforcement should be suppressed.

### A. Initial Stop

Both Kramarczyk and Hephner object to Magistrate Judge Jarvey's conclusion that the troopers were justified in initially stopping the truck. They argue that the stop of the truck violated the Fourth Amendment, and therefore any evidence seized as a consequence of that stop must be suppressed as "fruit of the poisonous tree." Hephner specifically argues that but for the tip from Wisconsin police, the troopers would not have stopped the truck.

■■■■■ The Court agrees with Magistrate Judge Jarvey's legal analysis and finds that the initial stop of the truck in which Defendants were traveling was constitutionally permissible. A law enforcement officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, this case does not involve a stop based on "reasonable suspicion," but one based on probable cause. "It is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle." *United States v. Barry*, 98 F.3d 373, 376 (8th Cir.1996) (quoting *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993)). This is true even if a valid traffic stop is a pretext for other investigation. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An officer making a traffic stop does not violate the Fourth Amendment by asking

the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car. *United States v. Poulack,* 236 F.3d 932, 935 (8th Cir.2001), *cert. denied,* 534 U.S. 864, 122 S.Ct. 148, 151 L.Ed.2d 99 (2001). A police officer may also question the vehicle's occupants to verify the information provided by the driver. *United States v. Foley,* 206 F.3d 802, 805 (8th Cir.2000). Here, the troopers heard a muffler they considered excessively loud. That auditory perception provided probable cause to believe the truck violated Iowa Code section 321.436.[2] The troopers had a valid basis for stopping Defendants' truck; thus the troopers' underlying motive, if any, is irrelevant. The Court therefore finds, as did Magistrate Judge Jarvey, that the initial stop of the truck was constitutional.

### B. The Searches

Kramarczyk and Hephner make several objections to the Report and Recommendation relating to the scope of the search of the truck and its contents. Hephner's objections to the Report and Recommendation are: (1) the search conducted after transporting the truck to the DOT at Oakdale, Iowa was unconstitutional because the search could have been conducted at or near the location of the stop and because it exceeded the consent to search given by Kramarczyk; and (2) the stop lasted longer than necessary to effectuate the purposes of the stop. Kramarczyk's objections to the Report and Recommendation regarding the search are: 1) the troopers exceeded the scope of the consent to search the truck given by Kramarczyk when they transported the truck to the DOT facility; 2) the movement of the truck to the DOT facility was not reason-

able under the circumstances presented; and (3) the government failed to establish that the drug dog was certified or otherwise capable of providing a reliable indication of the presence of narcotics and thus the government failed to furnish probable cause for the search of the toolbox. Pursuant to 28 U.S.C. § 636(b)(1), the Court will address each of these objections in turn.

### 1. Scope of the Consent to Search the Truck

■ Defendants object to Magistrate Judge Jarvey's Report and Recommendation on the basis that the location specified in the Consent to Search form was "exit 225 on 80," but the troopers moved the truck and conducted the search at the DOT maintenance garage. Both Kramarczyk and Hephner object to Magistrate Judge Jarvey's finding that changing the location of the search was reasonable. They also argue that the troopers exceeded the scope of Kramarczyk's consent when they transported the truck to the DOT. The Court finds that the troopers were justified in transporting the truck to the DOT. The troopers made a decision to move the truck to a safer and warmer location to conduct the search. Also, because it was a cold and windy day, the dog handler was concerned that the weather conditions out in the open would make it more difficult for Woody to pinpoint an odor. In *United States v. Mays,* 982 F.2d 319, 320 (8th Cir.1993), the Eighth Circuit Court of Appeals approved the police officers' decision to move the defendant's car to a nearby police station. The court permitted the officers to move the vehicle to a secure location to protect their and the public's safety. *Id.* The court further authorized any peace officer to immediately

---

**2.** "Every motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent ex- cessive or unusual noise...." Iowa Code § 321.436.

move a vehicle to a more secure location if "an officer has reason to believe [the vehicle is] being used to transport contraband." *Id.* Here, the troopers had reason to believe Kramarczyk's vehicle was being used to transport contraband because the troopers had been notified by Wisconsin police that a truck, the description and license plate number of which matched Kramarczyk's truck, was transporting cocaine to Wisconsin.

 The Court also finds that the troopers did not exceed the scope of Kramarczyk's consent when they searched the truck interior and exterior.[3] It is well-settled that law enforcement officers may rely on consent as the basis for a warrantless search, but they have no more authority than that granted by the scope of the consent. *See Florida v. Jimeno,* 500 U.S. 248, 251–52, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *Walter v. United States,* 447 U.S. 649, 656–57, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). The scope of consent is measured by objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801.

 Kramarczyk's consent to search the truck's interior and exterior necessarily included inherent authorization for the troopers to temporarily seize the truck for the duration of the search. The Court finds that moving the truck to a safer and warmer location where facilities were available to efficiently complete the search was within that inherent consent. *See United States v. Kapperman,* 764 F.2d 786, 792 (11th Cir.1985) (moving the location of a consensual car search or requiring the defendant to ride in a patrol car to where the search would be conducted did

not convert an investigatory stop into an arrest). Similarly, the troopers' moving the location of the search and transporting the truck and Defendants to the DOT did not automatically convert an in-scope search into an out-of-scope search. There was no evidence of any physical coercion, duress, offered promises, or other means of persuasion by law enforcement. Kramarczyk was free to voice an objection to the moving of the truck at any time. At no time did Kramarczyk withdraw his consent to the search. Defendants were transported to the DOT in patrol cars, but they were not handcuffed. Defendants had not been placed under arrest and they engaged in casual conversation with the troopers during the fifteen mile trip to the DOT. In fact, Kramarczyk assisted the police and therefore behaved consistently with a continuation of the consent to search. Also, Defendants were present throughout the continuation of the search at the DOT and never objected. The failure of Kramarczyk to object would confirm a reasonable person in the belief that the scope of the consent was not being exceeded. *See United States v. Dewitt,* 946 F.2d 1497, 1501 (10th Cir.1991) and *United States v. Harris,* 928 F.2d 1113, 1118 (11th Cir.1991).

### 2. Consent to Search the Toolbox in the Truck

Kramarczyk, the driver of the truck, executed a written consent to search the truck. The troopers then searched the truck as well as a locked toolbox in the open bed of the truck. The record is clear that the toolbox belonged to Hephner, the passenger, and that law enforcement knew it was Hephner's toolbox. Hephner did not expressly consent to a search of the toolbox. Hephner also did not object to

---

**3.** The issue of the search of the locked toolbox which was found in the bed of the truck is addressed separately.

the search of the toolbox. The issues are thus: (1) whether the toolbox was within the scope of Kramarczyk's written consent; (2) whether Kramarczyk's written consent included consent to search Hephner's toolbox in which the drugs were found because of actual or apparent authority; and (3) whether Hephner impliedly consented to the search or his toolbox. For the following reasons, the Court finds that Kramarczyk had neither actual nor apparent authority to consent to the search of the toolbox, and that Hephner did not impliedly consent to the search of the toolbox.

▇▇▇▇ "Fourth Amendment rights are personal [and] may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one which has 'a source outside of the Fourth Amendment either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (quoting *Rakas,* 439 U.S. at 143–44 n. 12, 99 S.Ct. 421.) The Court notes that, as a passenger, Hephner does not have standing to object to a warrantless search of the truck, but Kramarczyk does. *See United States v. Green,* 275 F.3d 694, 699 (8th Cir.2001) (citing *Rakas,* 439 U.S. at 131, 99 S.Ct. 421 (determining that a person has no reasonable expectation of privacy in an automobile belonging to another)). Hephner does, however, have standing to object to the search of his toolbox, but Kramarczyk does not.

### a. Scope of the Consent to Search Toolbox

▇▇▇ The scope of consent is measured by objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801. The objective reasonableness standard allows for the extent of the suspect's consent to vary depending on the circumstances. In *Jimeno,* the Court found it unreasonable for an officer to believe the consent to search a trunk would authorize a search of a locked briefcase inside the trunk. *Id.* at 251–52, 111 S.Ct. 1801. A locked briefcase is comparable to a locked toolbox in that both are closed and locked containers that often hold personal property items. Arguably then, it would have been unreasonable for the troopers to believe that Kramarczyk's consent to the general search of the truck included the search of a locked toolbox that did not belong to him. *See also United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993) (holding that a driver's authority to consent to search of a rental car did not extend to the search of the passenger's purse); *United States v. Rodriguez,* 888 F.2d 519, 523–25 (7th Cir.1989) (requiring separate third-party authority for a general search of a room and a defendant's briefcase located inside the room); *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978) (holding that although a mother had authority to consent to a search of general areas of the home, this authority did not extend to the interior of the son's footlocker); *Poulack,* 236 F.3d 932, 935 (holding that a passenger's authority to consent to the search of a rented vehicle did not include the authority to consent to the driver's wrapped and sealed boxes). In light of the foregoing, the Court finds that the scope of Kramarczyk's written consent did not include a search of Hephner's locked toolbox.

### b. Actual Authority to Search Toolbox

▇▇▇ One issue in this case is whether Kramarczyk had the actual authority to

consent to the search of Hephner's toolbox by virtue of the fact that Kramarczyk owned and was driving the truck in which Hephner was a passenger. A finding of actual authority depends on whether there is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Reasonableness, therefore, is the applicable standard. *United States v. Buckles*, 495 F.2d 1377, 1382 (8th Cir.1974) (quoting *Maxwell v. Stephens*, 348 F.2d 325, 337–38 (8th Cir.1965)). It is well established that the consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that common authority is shared. *Matlock*, 415 U.S. at 170, 94 S.Ct. 988. The Court observed that common authority

> rests... on mutual use of the property by persons generally having joint access or control for most purposes, so it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 172 n. 7.

While the Eighth Circuit Court of Appeals has decided various third-party consent cases, it has not discussed the actual authority issue and instead decided the cases on other grounds. *See, e.g., United States v. Hammons*, 152 F.3d 1025, 1027–28 (8th Cir.1998) (finding that the consenting third party had apparent authority); *United States v. Czeck*, 105 F.3d 1235, 1239–40 (8th Cir.1997) (finding that the consenting third party had apparent au-

thority); *United States v. Brokaw*, 985 F.2d 951, 953–54 (8th Cir.1993) (relying on the apparent authority doctrine, the court concluded that the third party could consent to the search of a trailer occupied by the defendant but located on the third party's property and owned by the third party); *United States v. Wright*, 971 F.2d 176, 180 (8th Cir.1992) (finding that the evidence inside of the bag was in plain view, thus the court did not have to determine whether the homeowner could consent to the search of the guest's bag); *United States v. Ruiz*, 935 F.2d 982, 984–85 (8th Cir.1991) (concluding that the defendant had abandoned his interest in the bag, thus obviating the need to discuss third party consent issue).

Because the Eighth Circuit Court of Appeals has not issued a ruling that is controlling in this case, the Court turns to other circuit courts for guidance. In *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993), the Ninth Circuit Court of Appeals concluded that the joint renter of a car did not have the actual authority to consent to the search of the other car renter's purse. *Id.* at 764. The court noted that "[t]he shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property." *Id.* In *United States v. Jaras*, 86 F.3d 383 (5th Cir.1996), the Fifth Circuit Court of Appeals found that the driver of a car did not have actual authority to consent to the search of his passenger's suitcases in the trunk of the car. *Id.* at 389. The court found it insufficient to show that the driver mutually used and had joint control over the suitcases. *Id.*

In *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the Court held that the defendant, in leaving a duffel bag at his cousin's house and allowing his cousin to use the bag, "must be taken to have assumed the risk that [the

defendant's cousin] would allow someone else to look inside." Similarly, in *Buckles,* 495 F.2d 1377, the court concluded that the owner of a home could consent to the search of the defendant's jacket, even though the owner had told police that the jacket was not hers. In *Buckles,* the defendant was not present when the officers took the jacket. Nor does it appear from the facts set forth in the *Buckles* opinion that the officers knew that the jacket belonged to the defendant. Also, the defendant's jacket was unsecured and in a common area, and thus accessible to every person entering the home.

*Frazier* and *Buckles* can be distinguished from the facts of the instant case. In this case, Hephner was present at the time of the search of the toolbox and the troopers knew that the toolbox belonged exclusively to Hephner. Instead of asking Hephner for consent to search *his* toolbox, however, the troopers relied on Kramarczyk's written consent to search the truck. Furthermore, Hephner's toolbox was locked, thus evidencing a greater subjective expectation of privacy in his sealed box than the defendants in *Frazier* and *Buckles* had in their belongings, which were left in the open for anyone to search through.

▇ In the instant case, there is no evidence that Kramarczyk had use of, let alone joint control over or access to, the toolbox. Furthermore there is not evidence Hephner ever provided Kramarczyk with the authority to consent to the search of his toolbox. Kramarczyk's sole interest is that the toolbox was in an area where Kramarczyk had a legitimate expectation of privacy, that is, it was contained within the bed of his truck. Accordingly, as the Ninth Circuit Court of Appeals found in *Welch,* on similar facts, the Court concludes that while Hephner's toolbox was contained within an area that Kramarczyk had joint access to or control over, Kra-

marczyk did not possess the actual authority to consent to the search of Hephner's toolbox.

### c. Apparent Authority to Search Toolbox

▇ Under the apparent authority doctrine, a search will be valid as long as the facts available to the law enforcement officer at the time of the search would warrant a reasonable person in the belief that someone with authority over the items or containers to be searched consented to the search. 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.3(g). The United States Supreme Court adopted the "apparent authority" doctrine in *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

This doctrine, however, is limited to mistakes of fact, not law. 3 Wayne LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.3(g). Thus, for example, this doctrine would not validate an officer's erroneous belief that a landlord is legally authorized to consent to the search of a tenant's apartment. *United States v. Brown,* 961 F.2d 1039, 1041 (2nd Cir.1992); *see also Welch,* 4 F.3d at 764–65 (recognizing mistake of fact-law distinction); *United States v. Salinas–Cano,* 959 F.2d 861, 865–66 (10th Cir.1992) (same); *United States v. Whitfield,* 939 F.2d 1071, 1073–74 (D.C.Cir.1991) (same).

In this case the troopers apparently believed that because the toolbox was in the bed of Kramarczyk's truck, Kramarczyk's consent to the search of the truck extended to the search of the toolbox. The apparent authority doctrine, however, has no application in this case, because the troopers were not mistaken as to any essential facts, i.e., there was no question that it was Kramarczyk's truck and that the locked toolbox in the truckbed belonged exclusive-

ly to Hephner. Rather, the troopers were apparently mistaken as to the law, i.e., they believed that the owner of a truck could consent to search all items in the truck, regardless of ownership. *See Salinas–Cano,* 959 F.2d at 866 (holding that the police could not infer that the homeowner had the authority to consent to the search of the defendant's bag " 'merely from [the consenter's] ownership of the house' " (citation omitted)). In this case, the troopers knew that the toolbox belonged to Hephner. There was no basis for them to believe that because the toolbox was inside the truck, Kramarczyk's consent extended to the search of the toolbox. The Court therefore finds that Kramarczyk did not exercise apparent authority to consent to the search of Hephner's toolbox.

### d. *Implied Consent to Search Toolbox*

In *United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 649 n. 3 (8th Cir.1999), the court rejected the government's argument that the defendant impliedly consented to the search of his vehicle because the defendant did not object when the officer told the defendant that the canine would sniff the vehicle's exterior, nor did the defendant object when the officer told him that he would search the trailer after the canine alerted. The Court finds the situation in *$404,905.00 in U.S. Currency* to be analogous to the case at hand and therefore holds that Hephner did not impliedly consent to the search of his toolbox by not objecting to the search.

### 3. *Length of the Stop*

 Kramarczyk and Hephner further argue that the stop lasted longer than necessary to effectuate the purposes of the stop. The Court concurs with Magistrate Judge Jarvey's legal analysis and finds it to be fully supported by the record and the law with respect to the length of the stop. The fifteen minute interval between the stop and the search was not unreasonably long, bearing in mind that the time between the stop and the consent was spent writing a warning ticket for the loud muffler and for the failure to carry proof of insurance. Under these circumstances, the Court finds the length of the stop was not longer than necessary to effectuate the purposes of the stop. *See, e.g., United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Owens,* 167 F.3d 739 (1st Cir.1999); *United States v. Hardy,* 855 F.2d 753 (11th Cir.1988).

### 4. *Certification of the Canine*

 Magistrate Judge Jarvey found that the drug dog's alert constituted probable cause to search the entire truck and the toolbox. A dog sniff of the exterior of a vehicle is not a search. *See United States v. Gregory,* 302 F.3d 805, 810 (8th Cir.2002) (citations omitted). The open truck bed of a pick-up truck is considered the exterior of the truck and is not subject to Fourth Amendment protection. The exterior canine sniff of an item located in a public place does not constitute a search within the meaning of the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In the case at hand, the toolbox, located in the open truck bed, was not subject to Fourth Amendment protection. *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Muniz–Melchor,* 894 F.2d 1430 (5th Cir.1990) (there was no legitimate expectation of privacy in the exterior of an exposed propane tank mounted atop of the open bed of a pickup truck).

 "A dog's positive indication alone is enough to establish probable cause

for the presence of a controlled substance *if the dog is reliable."* (emphasis added) *United States v. Sundby,* 186 F.3d 873, 876 (8th Cir.1999). That the identification of drugs by a dog provides probable cause that drugs are present is premised on the assumption that the dog is a "well-trained narcotics detection dog." *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once probable cause is established, a vehicle can be searched without a warrant and without consent under the automobile exception to the warrant requirement. *United States v. Bloomfield,* 40 F.3d 910, 919 (8th Cir.1994) (citing *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)).

In his objections to Magistrate Judge Jarvey's Report and Recommendation, Kramarczyk points out that the government failed to present any evidence at the June 24, 2002 hearing or at the October 10, 2002 hearing to support the conclusion that the canine used at the scene was certified or otherwise capable of providing a reliable indication of the presence of controlled substances.

The Court notes that neither Defendant raised the issue of the drug dog's reliability in their papers and only passing mention was made of the drug dog in Kramarczyk's closing remarks following the second evidentiary hearing before the Magistrate Judge. Kramarczyk, who would not have standing to challenge the search of Hephner's locked tool box, was the only defendant to raise the issue of the drug dog's reliability. Hephner, the owner of the toolbox in which law enforcement stated they found the illegal substances, did not raise the issue at all before the Magistrate Judge nor in his objections to the Report and Recommendation.

Pursuant to Federal Rule of Civil Procedure 72(b), the district court has discretion to consider "further evidence." Pursuant to this discretion, the Court held an evidentiary hearing on April 2, 2003 regarding the sole issue of the reliability of the narcotics canine, finding that the United States had not been put on notice prior to the suppression hearing that the drug dog's reliability was an issue.

At the April 2, 2003 hearing, the government put forth sufficient facts to prove that Woody was a reliable drug dog. Based on the foregoing record describing the dog's training and track record, the Court concludes that on April 3, 2002, Woody was a well-trained narcotics detection dog and as such his alert established probable cause.

 If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Therefore, Woody's positive indication during the sniff provided probable cause to search the truck and Hephner's toolbox. *See Bloomfield,* 40 F.3d at 919.

### C. Hephner's Statements

In his objections to the Report and Recommendation, Hephner contends his statements made to law enforcement officers before being given *Miranda* warnings and his statements made after he invoked his right to consult counsel must be suppressed because they were obtained by the government in violation of the Fifth Amendment of the United States Constitution. As explained by Magistrate Judge Jarvey, at issue are six statements made by Hephner: (1) casual conversation unrelated to the traffic stop; (2) a statement regarding travel to Reno to lose money after losing his job; (3) statements made en route to the DOT offering a possible explanation as to why the drug dog may have alerted to areas in the truck; (4)

statements made by Hephner claiming ownership of the toolbox and losing the key in Reno; (5) after being advised of his *Miranda* rights, Hephner inquired about what the drug dog had found; and (6) after signing a *Miranda* waiver, Hephner indicated that a statement that Kramarczyk made was truthful.[4] Hephner argues that (1) statements one through four should be suppressed because they were made while Hephner was "in custody" and before receiving the *Miranda* warning; and (2) the sixth statement should be suppressed because after Hephner invoked his right to counsel, law enforcement began questioning him.

### 1. Whether Hephner Was "In Custody"

Magistrate Judge Jarvey found that for purposes of application of the *Miranda* rule, Hephner was not "in custody" when he made the first four statements. *Miranda v. Arizona*, 384 U.S. 436, 466–68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As a result, Magistrate Judge Jarvey concluded that statements one through four are admissible.

▉▉▉▉ The Court agrees with Magistrate Judge Jarvey's conclusion that Hephner's statements made prior to the *Miranda* warning were not made in violation of his rights under *Miranda*, 384 U.S. at 466–68, 86 S.Ct. 1602. Generally, *Miranda* warnings are not required during mere investigative stops. *Id.* But if a person is "in custody" and subjected to restraints comparable to those of a formal arrest, he must be advised of his *Miranda* rights. *Id.* A suspect is "in custody" for purposes of *Miranda* when that person is arrested, or when the suspect is "deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. 1602; *United*

*States v. Johnson*, 64 F.3d 1120, 1125 (8th Cir.1995). To determine if a suspect who has not been arrested is nonetheless in custody, a court must consider whether a reasonable person in the suspect's position would have understood the situation to be one of custody. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Johnson*, 64 F.3d at 1125. Police intervention rises to the level of an arrest only when a reasonable man in the subject's position would have understood his situation to be tantamount to an "arrest," pursuant to the totality of the circumstances. *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138. A court must make this objective determination of custody by looking at the totality of the circumstances. *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir.1990).

An examination of the circumstances surrounding the interaction between Hephner and law enforcement officers reveals that Hephner was not "in custody" when statements one through four were made. Hephner was not originally subject to "arrest." The arrest ensued only after the truck and toolbox were searched and the narcotics were found. That was the critical moment of arrest, not before.

The mere presence of several officers and the moving of the truck to the DOT did not convert a simple investigative stop into an arrest. *United States v. Hathcock*, 103 F.3d 715 (8th Cir.1997). The troopers never communicated to Hephner verbally that he was under arrest or that they wanted to arrest him. The Court reasons, moreover, that a reasonable man would, under these circumstances, believe only that he was being detained for investigation, and not being placed under arrest. *United States v. McKines*, 933 F.2d 1412,

---

4. Hephner does not appear to challenge Magistrate Judge Jarvey's finding that the fifth statement is admissible.

1419 (8th Cir.1991). Thus, in light of the troopers' conduct, the incident fell short of a *de facto* arrest.

In sum, for the same reasons articulated by Magistrate Judge Jarvey, this Court finds that the interaction was not custodial for purposes of application of the *Miranda* rule and Hephner's Motion to Suppress statements one through four should be denied.

### 2. Whether Hephner Waived His Right to Consult Counsel

Magistrate Judge Jarvey found that Hephner's sixth statement was admissible because Hephner voluntarily waived his right to consult counsel. Magistrate Judge Jarvey found that Hephner executed a *Miranda* rights waiver and that he voluntarily waived his right to counsel by initiating conversations and volunteering information. Magistrate Judge Jarvey based this finding on the government's exhibit 2. At the June 24, 2002 suppression hearing, Assistant United States Attorney C.J. Williams described exhibit 2 as "the *Miranda* rights **waiver** that was signed by the defendant in this case." (tr., p. 123, lines 8–10) (emphasis added). However, a review of the government's exhibit 2 indicates that Hephner executed an **acknowledgment** of his *Miranda* rights, not a **waiver**. Without an express written waiver of his *Miranda* rights, the Court next turns to whether the circumstances indicate that Hephner knowingly and voluntarily waived his right to consult counsel.

Once a suspect invokes his right to have counsel present during a custodial interrogation, all questioning must cease until counsel is present. *Miranda* 384 U.S. at 474, 86 S.Ct. 1602. This right is derived from the Fifth Amendment's privilege against self-incrimination, and may of course be waived. *See id.* at 474–75, 86 S.Ct. 1602. The government bears the burden of proving by a preponderance of the evidence that the defendant knowingly and voluntarily waived this right. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Dougherty,* 810 F.2d 763, 773 (8th Cir.1987). A suspect may waive his right to consult counsel if he initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). A valid waiver of a suspect's right to consult counsel cannot be established by showing only that the suspect responded to further police-initiated custodial interrogation even if he has been advised of his rights. *Id.* An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.*

The Court finds that Hephner invoked his right to counsel by asking to speak with and by speaking with an attorney. The Court further finds that law enforcement initiated subsequent questioning of Hephner. Officers asked Hephner whether Kramarczyk was being honest or truthful. (June 24, 2002 tr., p. 129, lines 23–24.) While Hephner answered the officers' questions, he did so only after they had initiated conversation with him. Hephner did not initiate the subsequent communication with law enforcement. Therefore, the Court finds that Hephner did not knowingly and intelligently waive his right to counsel and Hephner's sixth statement should be suppressed.

### IV. CONCLUSION

**IT IS ORDERED** that:

1. Defendant Jesse Hephner's objections to Magistrate Judge Jarvey's Report and Recommendation [docket no. 41] are

SUSTAINED in part and OVERRULED in part as discussed above;

2. Defendant Shannon Kramarczyk's objections to Magistrate Judge Jarvey's Report and Recommendation [docket no. 42] are OVERRULED.

3. Defendant Jesse Hephner's Motions to Suppress [docket nos. 17 and 20], joined by Defendant Shannon Kramarczyk, are SUSTAINED to the extent they seek to exclude Hephner's statements made to law enforcement officers after he invoked his right to consult counsel, but are otherwise OVERRULED; and

4. Magistrate Judge Jarvey's Report and Recommendation [docket no. 39] is adopted to the extent outlined above.

5. Trial in this matter is set for **June 2, 2003 at 8:00 a.m.**