STATE OF MAINE                                  SUPERIOR COURT
PENOBSCOT, SS.                                  Docket No. CR-05-852

                                                Ｆｅｌ ｌ／ｆ  ．Ｕ'３'（ｃ

STATE OF MAINE              )
                           )
                           )
                           )
                           )
         v.                )        __ORDER__
                           )
                           )
                           )
BILAL DAWAN-ABDULLAH,       )
              Defendant.    )

FILED & ENTERED
SUPERIOR COURT

APR 0 3 2006

PENOBSCOT COUNTY

        The Defendant moves to suppress certain items of contraband seized on August
19, 2005, and certain statements made by the Defendant in conjunction with the seizure.
The facts are uncontroverted.

        On August 19, 2005, a citizen (Joyce McLain) reported to Officer Cameron
McDunnah's brother that Breanna Boone would be arriving in the East Millinocket area
with cocaine. McDunnah's brother duly reported this information to the East
Millinocket Police Department. Sergeant Michael Davis of the East Millinocket Police
Department knows Joyce McLain and Officer McDunnnah's brother and considered the
information to be reliable.[1]

        Sergeant Davis assigned Officer Steven James to conduct a surveillance for Ms.
Boone's vehicle.[2] Shortly thereafter, the Boone vehicle appeared as Joyce McLain had
predicted. Ms. Boone was driving; she was accompanied by a single passenger. Officer
James noted that the rear license plate display was deficient. He stopped the vehicle and
spoke with Ms. Boone. The Defendant was the sole passenger in the vehicle.

        Ms. Boone identified a suitcase in the interior of the vehicle as belonging to her.
Officer James asked for her consent to search the suitcase. She acquiesced. Inside the
suitcase was located a small backpack which was determined to belong to the
Defendant. Officer James located items which clearly appeared to be contraband
schedule drugs. The Defendant offered no objection at any time to the search of the
suitcase or its contents. He was later arrested. Upon being advised that he was being
charged with Trafficking in cocaine and heroin,[3] he advised that it was only cocaine (i.e.
– there was no heroin). This motion to suppress followed his indictment.

_____

[1] The information consisted of a report that Ms. Boone would be traveling in her own vehicle and
would be accompanied by a single African-American male who was arriving from Boston.
[2] Officer James is familiar with Ms. Boone and her vehicle.
[3] Sergeant Davis believed, on the basis of his drug field-identification training, that one or more
of the packages contained heroin.

Generally, police do not have to make a separate request for permission to search each closed container found in a vehicle. United States of America v. John Douglas MacCready, 878 F. Supp. 976, 978 (W.D. Texas, 1995)(citing, Florida v. Jimeno, 500 U.S. 248 (1991). There are cases, however, that limit the scope of this consent. For example, the Fifth Circuit has at least implied that the passenger of a vehicle may prevent the police from searching his/her property within that vehicle. See United States v. Crain, 33 F.3d 480, 484 (1994)(implying that a passenger of an automobile can prevent the search of his own belongings when it upheld the legality of a consent search because none of the passengers attempted to limit the scope of the consent). Also, in MacCready, the court noted that the driver's general consent to search the vehicle does not, by itself, allow officers to search the personal belongings of a passenger who *specifically objects at the time of search*. MacCready, 878 F. Supp. at 978 (emphasis added).

Also, consent to authorize a warrantless search may be given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." State v. Libby, 546 A.2d 444, 446 (Me. 1988) (citing, United States v. Matlock, 415 U.S. 164 (1974). A finding of consent focuses on whether the third party giving consent has sufficient authority or control in his own right over the premises, regardless of how much control the defendant may have. Matlock at 171 n. 7.

In Schneckloth v Bustamonte, 412 U.S. 218 (1973), the Court, noting that an automobile in which the accused was riding had been searched without a warrant but with the consent of another occupant prior to any arrests, held that stolen checks found during the search had been properly admitted into evidence against the accused. The Court said that (1) a search authorized by consent is wholly valid and falls into a specifically established exception to the warrant and probable cause requirements; (2) the question whether consent to a search was given voluntarily or was the product of duress or coercion is a question of fact to be determined from the totality of all the circumstances; and (3) under this test, consent to the search in the case at hand had been given voluntarily. Accordingly, the Supreme Court reversed a Federal Court of Appeals' judgment which had set aside an order denying federal habeas corpus relief to the accused.

In Frazier v. Cupp, 394 U.S. 731, 740 (1969), the Court 'dismissed rather quickly' the contentions that the consent of the petitioner's cousin to the search of a duffel bag, which was being used jointly by both men and had been left in the cousin's home, would not justify the seizure of petitioner's clothing found inside; joint use of the bag rendered the cousin's authority to consent to its search clear. Indeed, the Court was unwilling to engage in the 'metaphysical subtleties' raised by Frazier's claim that his cousin only had permission to use one compartment within the bag. Id. By allowing the cousin the use of the bag, and by leaving it in his house, Frazier was held to have *assumed the risk* that his cousin would allow someone else to look inside. Id.

In United States v. Jesse Hephner and Shannon Kramarczyk, 260 F. Supp. 2d 763 (N.D. Iowa, 2003), Jesse Hephner was a passenger in a truck driven by Shannon Kramarczyk. Hephner at 767. Kramarczyk authorized Iowa state troopers to search the truck, which they subsequently did. Id. at 768. A red tool box in the truck, which Hephner identified as his property, was also searched. Id. at 769. The box was locked, and Hephner stated he did not have a key. Id. When the officers called a locksmith to

open it, neither Hephner nor Kramarczyk objected. Id. Regarding the scope of the consent to search the toolbox, the court stated:

> The scope of consent is measured by objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 251. The objective reasonableness standard allows for the extent of the suspect's consent to vary depending on the circumstances. In *Jimeno,* the Court found it unreasonable for an officer to believe the consent to search a trunk would authorize a search of a locked briefcase inside the trunk. *Id.* at 251-52. A locked briefcase is comparable to a locked toolbox in that both are closed and locked containers that often hold personal property items. Arguably then, it would have been unreasonable for the troopers to believe that Kramarczyk's consent to the general search of the truck included the search of a locked toolbox that did not belong to him. *See also United States v. Welch,* 4 F.3d 761, 764 (9th Cir. 1993) (holding that a driver's authority to consent to search of a rental car did not extend to the search of the passenger's purse); *United States v. Rodriguez,* 888 F.2d 519, 523-25 (7th Cir. 1989) (requiring separate third-party authority for a general search of a room and a defendant's briefcase located inside the room); *United States v. Block,* 590 F.2d 535, 541 (4th Cir. 1978) (holding that although a mother had authority to consent to a search of general areas of the home, this authority did not extend to the interior of the son's footlocker); *Poulack,* 236 F.3d 932 at 935 (holding that a passenger's authority to consent to the search of a rented vehicle did not include the authority to consent to the driver's wrapped and sealed boxes). In light of the foregoing, the Court finds that the scope of Kramarczyk's written consent did not include a search of Hephner's locked toolbox.
> Id. at 773.

In distinguishing Hephner from Frazier, the Court in Hephner noted that the troopers knew that the toolbox belonged exclusively to Hephner; the troopers did not ask Hephner is they could look through his toolbox, but rather relied on Kramarczyk's consent; and Hephner's toolbox was locked, thus evidencing a greater subjective expectation of privacy. Id. at 775. The court also noted that there was "no evidence that Kramarczyk had use of, let alone joint control over or access to, the toolbox." Id.

The Supreme Court has also held that police officers with probable cause to conduct a warrantless search of a car for contraband do not violate the Fourth Amendment by searching a passenger's personal belongings in the car, where such belongings are capable of concealing contraband. In Wyoming v Houghton, 526 U.S. 295 (1999), it was held that a highway patrol officer did not violate the Fourth Amendment rights of a front-seat automobile passenger by searching the passenger's purse that the officer found on the back seat, where the officer had probable cause to conduct a warrantless search of the automobile for illegal drugs. Wyoming at 302. During the officer's stop of the automobile for speeding and driving with a faulty brake light, the driver admitted that he used a hypodermic syringe-which the officer had noticed in the driver's shirt pocket-to take drugs. Id. at 297-98. In light of this admission, the officer searched the passenger compartment for contraband. Id. at 298.

Upon finding the passenger's purse, the officer (1) removed a wallet from the purse, (2) learned that the passenger had falsely identified herself, and (3) continued his search of the purse, which was found to contain methamphetamine and drug paraphernalia. Id. at 299. A state court, in overturning the passenger's conviction, reasoned in part that the officer had not had probable cause to search the passenger's personal effects. Id. at 298-99. However, the Supreme Court, in reversing the state court's judgment, said that (1) neither United States v. Ross, 456 US 798 (1982), which held that if probable cause justifies the warrantless search of a lawfully stopped vehicle, then probable cause justifies the search of every part of the vehicle and its contents that may conceal the object of the search-nor the historical evidence that Ross relied upon admitted of a distinction among packages or containers based on ownership, as a passenger's personal belongings, like the driver's belongings, are "in" the car; and (2) the balancing of the relative interests weighed decidedly in favor of allowing searches of a car passenger's belongings, for with respect to car searches, (a) a passenger's privacy expectations are considerably diminished, and (b) the governmental interests at stake are substantial, as car passengers will often be engaged in a common enterprise with the driver and have the same interest in concealing the fruits or the evidence of their wrongdoings. Id. at 299-303. In a concurring opinion in Wyoming v Houghton, Justice Breyer expressed the view that the court's holding did not authorize a warrantless search of a container "attached" to a person, such as a woman's purse worn on her shoulder. Id. at 307-08.

Upon these circumstances, the court is satisfied that Boone had sufficient control and authority over her suitcase and its contents to consent to a full search. Further, by depositing his possessions inside a container subject to Boone's consent, the Defendant authorized her to submit to such a search. Finally, the Defendant's failure to object to the search, which occurred in his presence, constitutes a waiver of any rights which may have remained after Boone's global consent. Accordingly, the Defendant's motion to suppress the products of the search is denied.

Additionally, Defendant's statement which acknowledged that the contraband substance was cocaine (and not heroin), although made in a custodial setting, was not the subject of an interrogation. On the contrary, it was a truly spontaneous and non-compelled (although perhaps ill advised) statement which he made after the officer quite properly advised him of the charges which would be presented against him. Again, the Defendant's motion to suppress is denied.

So Ordered.

The Clerk may incorporate this Order upon the docket by reference.

Dated: April 3, 2006

Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT